LEWIS WILSON v. THE STATE.

1. IDENTITY OF BODY OF DECEASED.—See evidence held sufficient to identify a skeleton as that of the murdered woman on the trial of her husband for such murder.
2. MURDER—CIRCUMSTANTIAL EVIDENCE.—See facts held sufficient to sustain a verdict of murder in the first degree.

APPEAL from Robertson.   Tried below before the Hon. John B. Rector.

No brief for appellant.

*George Clark, Attorney General,* for the State.

GOULD, ASSOCIATE JUSTICE.—Appellant, Lewis Wilson, has been twice tried and convicted under an indictment charging him with the murder of his wife, Jane.   On a former appeal to this court the judgment was reversed on two grounds: 1st, because parties unskilled in anatomy had been allowed to give their opinion as to the sex of a human skeleton found in the woods, and supposed to be the remains of Jane Wilson; 2d, because it appears that the best evidence attainable to establish the sex, race, size, &c., of the skeleton, had not been adduced.

It is a provision of our Penal Code that "no person shall be convicted of any grade of homicide unless the body of the deceased, or portions of it, are found and sufficiently identified to establish the killing." (Paschal's Dig., art. 2205.)

The first question was as to the identity of the skeleton as the remains of Jane Wilson.   The substance of the evidence on this point on the first trial will be found in the opinion delivered on the reversal of the case at the last session at this place.   The case is again before us on substantially the same evidence, with the exception that one witness, Jane Kelly, who testified in the former trial, was not introduced on the second trial; and with the further difference that the record now contains the testimony of medical experts, and of no others, as to the sex, probable race and age of the skeleton, and also as to the correspondence of its condition as to decay with the hypothesis that it was the remains of Jane Wilson, and that she had been killed and left exposed in the open air about the time of her disappearance in August, 1872.

We have not had the benefit of brief or argument in behalf of appellant. The record shows that the point was made below that the skeleton examined by the medical experts was not proven to be the identical skeleton found in the woods, about three or four hundred yards from where defendant and wife had lived, some three or four months after her disappearance. Indeed one medical witness was of the opinion that the bones examined were not all parts of the same skeleton, but were the bones of different persons. His opinion on this point is overborne by the testimony of other medical experts. The bones of the skeleton found on Christmas eve of 1872 were carefully collected, put in a sack, and afterwards in a pine box, and buried in the graveyard at Hearne. The witness Griffin, who assisted at the inquest held on the day after the skeleton was found, and also at the disinterment from the graveyard at Hearne of the bones examined by the physicians, testifies as to their identity, not, it is true, with positive certainty, but in a manner scarcely less satisfactory. On digging in the designated spot in the graveyard at Hearne a pine box was found containing remains that corresponded so fully with the description given of the remains found, especially as to the fracture in the skull and the missing tooth, as to leave no reasonable doubt of their identity if, in truth, they all belonged to the same skeleton.

The medical testimony agrees that the skeleton was that of a woman about five feet four inches in height. One physician gives it as his opinion, based on the measurement of the facial angle, that the skeleton was that of a person of mixed blood. The facial angle of the skeleton was found to be between 68° and 69°. That of the negro was testified to be between 65° and 70°, and that of the Caucasian between 75° and 85°. The same physician judges from the appearance of the teeth that the person at death was from twenty to twenty-five years of age. The record does not state the age of Jane Wilson, though it is testified

that she said she had borne ten children, and also that she sometimes said that she was older than defendant. What defendant's age was does not appear. While it would seem probable that Jane Wilson was over twenty-five years of age, it is to be remarked that her real age is left uncertain; and the testimony as to the probable age of the skeleton was given, and from the nature of the case could only have been given as the opinion of the witness, of the approximate age. If there be a discrepancy, it is too indefinite to be entitled to much weight.

The upper jaw showed that the first incision tooth on the right side had been missing for years, *during the life of the party*. Whilst there is some discrepancy in the testimony as to whether Jane Wilson's missing tooth was from the upper or lower jaw, the testimony of Griffin, whose opportunities of knowing were good, is clear and distinct that it was from the upper jaw. The evidence established that the skeleton which was found at a time and place consistent with and suggestive of the hypothesis that it was the skeleton of Jane Wilson, corresponded generally with the appearance to be expected at that time in her remains; that it was the skeleton of a woman of about her height; that as far as could be ascertained it was, like her, of mixed blood, and that it was the skeleton of a person who, like her, had a missing front tooth, missing during life. We think the evidence was sufficient to establish that these were the remains of Jane Wilson.

The skull when first found had a place dented in, not broken entirely through, about the size of the head of a hammer. The physicians testify that this wound, if given in life, would have caused immediate death. One medical witness testifies that, in his opinion, the blow was given after death, because he would have expected to find some of the hair driven into the skull; but the others differ with him on this point. We think that the jury were justified in concluding, from the place and condition in which the

skeleton was found, that the death of Jane Wilson was caused by this wound.

There is no direct evidence that the defendant killed his wife, but circumstantial evidence fixes the crime on him with such certainty as excludes any other reasonable hypothesis. By more than one witness it is proved that he had repeatedly threatened to kill her. Three or four days before her disappearance he assaulted her with a gun, and when prevented from shooting her knocked her down and beat her with a stick. Afterwards he stated that he had tried to kill her and would kill her, G–d d—n her. Shortly after the disappearance of his wife, the time being variously stated at from one to three or four weeks, defendant married again. In reply to questions he stated that his wife never would come back again; that she had gone where she never would see this green earth any more. Some two or three weeks after she was missing, defendant proposed to a witness to go with him in the direction where the skeleton was afterwards found, saying, "I think we can find Jane." To another witness he said that she was dead and in hell, and he knew it. There is evidence that some two or three weeks after her disappearance Jane Wilson's trunk, containing some of her clothing, was found in the timber near the Griffin field, about a mile from where she and defendant lived. There is evidence also that defendant said Jane had left her trunk near that place and that he hunted for it about the Griffin field. A more detailed statement of the evidence is not regarded as necessary.

The only evidence for the defendant consisted in a feeble effort to account for the disappearance of his wife. One witness says that Jane Wilson told her she wanted her to stay and take care of her children and her things; that she was going away "with a brakeman on the train below to see her folks." The child of deceased and step-child of defendant, a girl of eleven or twelve years of age, at the

trial, some two and a half years after the occurrence, testi-fied that her mother said she was going off to hunt some-thing to eat; that she said something about going to see her folks, and "told them all good-bye;" that in the afternoon of the day she left, her mother carried her trunk away, and then returned, but had been gone again some two or three hours when defendant came home; that de-fendant staid at home that night, and next day went to hunt for her.

It seems quite probable that Jane Wilson attempted to leave her home, and had carried her trunk away before she was killed. What were the precise circumstances un-der which the deed was done may never be known. It is enough that the evidence points to no one else than Lewis Wilson as the murderer, and points to him with such cer-tainty and with such evidences of preconceived malice and purpose to kill as justifies the verdict of guilty of murder in the first degree.

The charge of the court was clear and concise, and seems to us unobjectionable. Although the motion for new trial assigns, among other grounds, the refusal of in-structions asked, the record does not show that any in-structions were refused. There is no bill of exceptions to any ruling or action of the court. It is recited in the state-ment of facts that defendant objected to the admission of evidence of what he had said in May or June preceding the act, showing an intention to kill his wife, as too remote. The evidence was certainly relevant and important.

One ground alleged for new trial is that the court erred in permitting the bones claimed to be the bones of Jane Wilson, to be brought into court and exhibited to the jury and commented on by counsel for the State. It does not appear, however, that this procedure was objected to at the time; and, if objection had been made, we see no error in allowing the medical experts to testify with the skeleton before them and the jury.

The careful examination which this case has received leads us to the conclusion that the appellant, on his trial, received the full benefit of the rules of law applicable to his case, and that there are no good grounds for disturbing the verdict or judgment.

The judgment is affirmed.

AFFIRMED.