## BILL HUNTER V. THE STATE.

*No. 542.   Decided June 15.*

1. **Murder—Special Venire Not in Conformity with Order of the Court—Motion to Quash—Practice.**—Where, on a trial for murder, the court had ordered that a special venire of ninety men be drawn, and the clerk issued a writ for sixty men only, and the defendant moved on this ground to quash the writ, which motion was overruled, *Held*, the defendant was entitled to have drawn the full list in number as ordered by the court, and the clerk had no power to curtail this number. *Held, further*, the court should have promptly sustained appellant's motion to quash the venire of sixty men, and have ordered the drawing of a new special venire in accordance with the original order.

2. **Corpus Delicti—Charge of the Court—Sufficiency of.**—On a trial for murder, where the only proof of the corpus delicti was the accomplice testimony of a witness, who testified to a confession made by defendant, and that he was shown the body of deceased by defendant; that it was dark, but the body looked like that of a white man, and the court charged the jury: "In prosecutions for murder, the State must establish clearly and satisfactorily two things—the criminal act, and the defendant's agency in the commission of such act." *Held*, this charge was not sufficient, in that it did not further explain to the jury the law with reference to such proof when made alone by confessions and accomplice testimony; and while the refused instruction requested by defendant went beyond the rule adopted by this court, and was not correct, it served to call the attention of the court to the defect in his charge on the subject, and a proper charge should have been given.

3. **Same—Proof of.**—It is essential to a conviction for any degree of culpable homicide, first, that deceased should be shown to have been killed, and secondly, this killing should have been proved to have been criminally caused. Unless the corpus delicti in both respects is proved, a confession by the accused is not by itself sufficient to sustain a conviction; nor will the testimony of an accomplice alone suffice for this purpose, but the two together may be sufficient. Following Anderson v. The State, ante, p. 546.

4. **Fact Case—Evidence—Corroboration of Accomplice Witness.**—See facts stated in the opinion, which are held extremely shadowy as tending to corroborate an accomplice's testimony.

APPEAL from the District Court of Falls. Tried below before Hon. S. R. SCOTT.

Appellant was indicted for the murder of one Tom Daves. At his trial he was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life. The opinion of the court sufficiently states the material evidence in the case, and no further statement is deemed necessary.

*Rice & Bartlett*, for appellant.—1. The court erred in overruling the defendant's motion to quash the original writ of special venire, because the same does not conform to the order of the court, in this, that the order directed that ninety men should be drawn on said special venire, when in fact only sixty men were drawn.

A special venire is a writ issued in a capital case by order of the court, commanding the sheriff to summon a certain number of persons as the court in its discretion may order, to appear before the court on a certain day, from whom the jury is to be selected. The order of the court for the issuance of the writ must specify the number of persons to be summoned, the time when such persons shall attend, the time when the writ should be returnable, and the clerk shall forthwith issue such writ in accordance with such order of the court. Code Crim. Proc., arts. 605, 608; Kellum v. The State, 33 Texas Crim. Rep., 82; Harrison v. The State, 3 Texas Crim. App., 558; Murray v. The State, 21 Texas Crim. App., 466; Osborne v. The State, 23 Texas Crim. App., 431; Bates v. The State, 19 Texas, 123.

2. The court erred in its charge to the jury in omitting to state, that before they could convict the defendant, they must believe that

the corpus delicti was proven by other evidence than the alleged confessions of the defendant made to the accomplice, John Washington; and because said charge did not explain to the jury the meaning of corpus delicti.

3. The court erred in failing to give in charge to the jury defendant's special charge number 3, on the subject of corpus delicti. [See this charge copied in the opinion of the court.]

4. The verdict of the jury is contrary to the evidence and wholly unsupported thereby, in this, that there was no proof of the corpus delicti, nor is there any suggestion thereof save and except the alleged confession of the defendant, testified to by the self-confessed accomplice, John Washington.

It is the imperative duty of the court in a capital felony to clearly charge the law of the case as made by every phase of the evidence; and an omission so to do, when excepted to, is reversible error; and especially so when a special charge is requested and refused embodying the law of the case.

In prosecutions for murder, it is incumbent on the State to establish the corpus delicti clearly and satisfactorily. The corpus delicti consists of (1) a criminal act, and (2) defendant's agency in the commission of such act. And the corpus delicti can not be established by the extrajudicial confessions of defendant alone, and uncorroborated; but the corpus delicti must be established by evidence aliunde and independent of such confessions.

The defendant in his motion for a new trial assailed the verdict of the jury as being insufficient, because the corpus delicti was not shown by other evidence than the testimony of the accomplice, John Washington. Willard v. The State, 27 Texas Crim. App., 386; Harris v. The State, 28 Texas Crim. App., 308; Puryear v. The State, 28 Texas Crim. App., 73; Jackson v. The State, 29 Texas Crim. App., 458; Lovelady v. The State, 14 Texas Crim. App., 545; Robinson v. The State, 16 Texas Crim. App., 347; Whart. Crim. Ev., 8 ed., secs. 325, 632; 1 Bish. Crim. Proc., secs. 1070, 1071, and notes; Rice Crim. Ev., chap. 38, secs. 293–299; 2 Greenl. on Ev., 15 ed., sec. 217; 3 Id., secs. 19, 30; Ruloff v. The People, 18 N. Y., 179; The People v. Bennett, 49 N. Y., 137.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the State penitentiary for life, and from the judgment of the lower court he prosecutes this appeal.

The deceased, Tom Daves, had been living in the neighborhood where the homicide occurred for several years, making his home with one W. R. Hudson. The last seen of him alive was on Sunday evening, the 23rd of December, 1887, just before Christmas. His body

was afterwards, between the 12th and 18th of January, 1888, found in the Brazos River, about two miles from where he had been last seen. The body of deceased was found floating in the river by one Riddle, who was in a skiff at the time, and he and others brought it to shore. It had evidently been in the water for sometime. After it was taken to shore, an examination was made then and afterwards, but no wounds' or bruises were found on said body. It appears, that after the Sunday evening when deceased was last seen no one missed him for two or three days, and no inquiry was made until his employer was told about the horse of deceased being tied down near the river, and then a search was made, and at that time some indications of a hole in the ground at or near the Damon place, not far from where deceased had been last seen alive, was discovered; and this, according to the testimony, bore some indications that some person had recently been interred and subsequently exhumed. The search, however, proved futile, until the accidental discovery of the body of the deceased in the river, as before stated. It does not appear that suspicion attached to any particular person at the time deceased was missing, nor when his body was found, and public attention was not directed towards the defendant until the latter part of 1892. At this time, one John Washington was arrested on a charge of cattle stealing in Milam County, and on his way to jail, and while there, told certain parties of what he knew about the killing of Tom Daves, and accused the defendant, Hunter, of having committed the deed. The latter was indicted on the 26th of February, 1893, and was tried and convicted in the July following.

The first assignment of error insisted on by appellant is with regard to the special venire ordered in this case. The bill of exceptions shows, that the court ordered a special venire of ninety men to try said case; that the clerk subsequently drew the names of only sixty persons, and issued a writ for sixty, and the appellant insists that this was such error as ought to cause the reversal of the case. Article 608, Code of Criminal Procedure, is as follows: "The order of the court for the issuance of the writ shall specify the number of persons required to be summoned, and the time when such persons shall attend, and the time when such writ shall be returnable, and the clerk shall forthwith issue the writ in accordance with such order." Article 610 indicates how the special venire shall be drawn. In Harrison v. The State, 3 Texas Criminal Appeals, 558, it is held, that the requirements of the law regarding special venires are to be construed strictly as against the State, and that all the essential features of the law must be complied with. In addition to the statutes already mentioned, the law requires, that after the special veniremen have been served, the defendant, if in jail, shall be served with a copy of the list of the special veniremen so served, at least one entire day before he is brought to trial. This is for the purpose of enabling him to see who are the persons selected to try him, and afford him an opportunity to select from said list such persons as he desires to sit on his jury, and in order to

afford the facility of exercising his right of challenge upon said list; and in our opinion, he is entitled to have drawn the full list in number, as ordered by the court, and the clerk has no power to curtail this. After the court has made its order, the duties of the clerk are not judicial, but merely ministerial, under the statute, and he has no option but to draw the exact number of men ordered by the judge. To hold otherwise would invade the province of the court, and invest the clerk with a power never intended by the law. In this particular case the record shows that forty-seven of the sixty only were summoned, and that of these only nine were secured on the jury, when the list was exhausted. After this list was exhausted, talesmen were summoned, so that the balance of the jury was constituted out of men originally selected by the sheriff. If the law had been pursued, these would have been drawn by the jury commissioners, instead of being summoned by the sheriff. One of the objects of the passage of the law with reference to drawing special venires, as we understand it, was to take this power, as far as possible, out of the hands of the sheriff and his deputies; and in this case this intent of the Legislature was violated, and in our opinion a valuable right of the appellant was infringed, and the court should have promptly sustained the appellant's motion to quash the venire of sixty men, and have ordered the drawing of a new special venire in accordance with the original order of the court.

The appellant complains in this case of the charge of the court on corpus delicti, which charge is as fellows: "In prosecutions for murder the State must establish clearly and satisfactorily two things—the criminal act, and defendant's agency in the commission of such act." On this subject the defendant asked the court to charge as follows: "Before you can convict the defendant, the corpus delicti must be proven beyond a reasonable doubt; and the corpus delicti consists not only of an objective crime, but of the defendant's agency in the crime; and, before you can consider the alleged confession of the defendant as inculpatory evidence against him, the proof of the corpus delicti must be absolutely and conclusively proven beyond a reasonable doubt by other evidence in the case outside the alleged confession of the defendant." In view of the evidence in this case, in our opinion, the court's charge was not sufficient, and the charge asked by defendant, though going beyond the rule adopted by this court, served to call the attention of the court to the defect in the charge given by the court on the subject, and a proper charge should have been given. On this subject Mr. Wharton says: "It is essential to a conviction for any degree of culpable homicide, first, the deceased should be shown to have been killed; and secondly, this killing should have been proved to have been criminally caused. Unless the corpus delicti in both these respects is proved, a confession by the accused is not by itself sufficient to sustain a conviction." Whart. on Hom., sec. 641; Lightfoot v. The State, 20 Texas Crim. App., 77;

Harris v. The State, 28 Texas Crim. App., 308. In Anderson v. The State, ante, p. 546, it was held, that the confession of the defendant alone did not establish the corpus delicti, nor did the testimony of an accomplice alone suffice for this purpose, but that the two together were sufficient.

The principal, if not the only, evidence in this case tending to show that the deceased came to his death by some criminal agency, and that the appellant was the criminal agent, is from the testimony of the witness John Washington. That he was an accomplice, we think, is clearly shown from the testimony, as before stated. Though knowing the facts which he relates, he concealed them until four or five years thereafter, when he was himself arrested for another offense, and then disclosed his information for the first time. His evidence is of a most peculiar and mysterious character. He testified, in substance: That on the same night Daves was missing defendant came to witness' house and called him up, saying that he had been off with a woman, and came by to see witness, and find out what he was doing. He said: "We have a good game up there, and let's go and beat those fellows." That he replied to the appellant that he had no money, and that appellant then said that he had plenty of money, and wanted witness to go with him. That he then agreed, and got on his horse, and rode down to Mrs. Damon's place, where the men were in the habit of playing; and when they got there, appellant said, "They are here, and we will find them." Just before they got to the branch where the witness afterwards saw the dead body, appellant said that he would trust him beyond any other person, and that he did not want him to go back on him. Witness kept asking where the boys were. Appellant said they were all right, and told him that he wanted him to go down the river, and that he had "downed his mob;" and witness asked him how much he had beat them out of, and he replied that he had downed his mob. "I asked where. Then we turned from the house, and went down the branch; and before we got there defendant said, 'I don't want you to tell anything, and before I will let you tell, I will kill you.'" Witness again asked where the boys were, and appellant said, "Come on." Just before they got to where they saw the dead body in the branch, appellant said again, "I downed him. I got away with him." Witness again asked where the boys were, and appellant said, "I have got him down all right, and I want to get him to the river, and I can depend on you, and I want you to help me get him to the river." They went on down to the branch, and when they got there, witness says he saw the dead body of a man in the branch, and defendant said that the body was Tom Daves. Witness asked him how he got there, and he said, "Confound him;" that he was drinking, and he drowned him, and said he was no man anyway. "He did not state why he drowned him, but said he had to do it." Witness then told him it was too late to move him; it was most day. Appellant then went into the water and

moved the body up the branch, came out, and then went towards Mrs. Damon's place, and said he would throw everybody off the track. Witness then went home, and saw no more. Never saw the body afterwards. Never talked with defendant about it afterwards. Witness stated, that though he saw the body, and it looked like a white man, he could not tell who it was, as it was night. This witness testifies, that defendant said he had money, and had downed his mob, and he further says that defendant gave him a dollar, which was all the money he saw. He further says, that he promised to keep the secret, and then defendant told him he had downed his mob. Witness further shows, that he did not put his hands on the body, but was very close to it. By other testimony it is shown that perhaps the motive for the homicide was robbery, but there is no evidence showing that the defendant had any money except by this one witness, who states that he paid him a dollar, which was all he saw. Hudson, the employer of deceased, testified, that a few days before Daves was missing he paid him some $70 or $80, and when the body of deceased was found there was found in the right pants pocket $10.55 in silver. There was also evidence showing that deceased came to the house of defendant, Hunter, late the evening before he disappeared, and that defendant went off with deceased, riding behind him, towards the Damon place. Defendant and two witnesses for him state that he came back very soon afterwards; but, on the other hand, statements were shown to have been made by defendant to the effect that he staid near the Damon place, waiting for the deceased, who went to the place on some mission, and did not return for some considerable length of time. The deceased, according to the testimony, was drinking to a considerable extent on the evening when he was last seen. This was substantially all the testimony of a criminative character against the defendant.

Now, looking at the testimony of the accomplice Washington alone, at the most we have the confessions of the defendant to the effect that he drowned the deceased; but, as we have seen, the fact that the deceased came to his death by drowning, and that the defendant was the criminal agent in such drowning, can not be established alone on the testimony of the accomplice; and beyond this, there must at least be proof by other witnesses tending both to show that the homicide was committed, and that defendant was the person who did the act. And the question presents itself, does this outside testimony tend to show that deceased came to his death by drowning in the branch near Damon's place, some two or three miles from the place in the river where his body was ultimately found, and that this was done by defendant? It is possible that this may have occurred. The deceased may have been drowned in the branch where this witness says he was drowned, and the defendant may have subsequently buried him in the hole near there, about which some of the witnesses speak, and subsequently disinterred him, and carried the body to the river, but there is no testi-

mony to this effect.    Nor does the fact, outside of said confession, that after the horse of the deceased was found, several days after the homicide, Bill Hunter told Mr. Hudson that the last he knew of deceased he went up to Damon's house, and that they might find his body, if he was dead, by looking around there, serve to shed any light on the question as tending to show any corroboration of the accomplice's testimony that the defendant was the party who got away with deceased. The fact in this case that the motive imputed for the homicide was robbery, and that in the pocket of deceased, when his body was found, there was $10.55 in silver untouched, serves very strongly to refute that theory, and destroy any presumption that might otherwise have existed that robbery was the motive for the murder.    The fact that there is some testimony showing deceased was likely to have undertaken to go across the river by fording it, and that he was then very much under the influence of liquor, would tend strongly to the theory that in such condition deceased may have drowned in making the attempt.    This theory is further strengthened by the fact that, although a rigid examination was made of deceased, no wounds or bruises whatever were found upon his person.    Witnesses say the skin was all on the body, and that it was all over the same color.   Giving the strongest view to all this extraneous testimony, which it is claimed tends to corroborate the accomplice, it is in our opinion extremely shadowy; but conceding that such testimony would be sufficient to authorize the conviction of defendant, as tending to corroborate the accomplice, yet, as stated before, the court's charge on the subject of corpus delicti did not fully and clearly present that issue to the jury.    The attention of the court was called to this failure by the charge asked on the part of the defendant, and a proper charge, fully presenting this question, should have been submitted by the court to the jury, in order that they might have intelligently passed on the testimony upon this vital issue in the case.

Other errors assigned it is not deemed necessary to consider; but, for the errors discussed, the judgment is reversed and the case remanded.

*Reversed and remanded.*

Judges all present and concurring.