KATE WILGANOWSKI v. THE STATE.

No. 3830.   Decided November 24, 1915.

Rehearing denied December 22, 1915.

**1.—Murder—Corpus Delicti—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence showed that the murder had been committed; that is, the death of the deceased had come about by some criminal agency, and that his death was caused by the defendant and no other person, which was not only shown by the confession of the defendant, but was corroborated by circumstantial evidence, the conviction for murder was sustained.   Distinguishing Follis v. State, 51 Texas Crim. Rep., 186; Gay v. State, 42 Texas Crim. Rep., 450, and other cases.

**2.—Same—Rule Stated—Confessions—Corpus Delicti.**

It is not necessary to prove all the elements of the corpus delicti independent of the confession; and the confession may be considered along with other facts and circumstances in evidence, and if the evidence, independent of the confession, tends to corroborate the confession and convinces the jury that the confession is a true statement of how the homicide occurred; that is, corroborated by independent evidence, in material particulars, the evidence is sufficient to sustain a verdict that the accused is guilty of the crime charged. Following Kugadt v. State, 38 Texas Crim. Rep., 681.

**3.—Same—Rule Stated—Confession—Independent Testimony.**

The rule established in this State is that it is not essential to establish a corpus delicti by testimony independent of the confession, but that the confession may be considered in connection with the other facts and circumstances in evidence, and if the circumstances related correspond in some point with those proven to have existed this may be evidence sufficient to support a conviction; as full proof of the corpus delicti, independent of the confession, is not required, and in many cases slight corroborating facts have been held to be sufficient.   Following Hunter v. State, 34 Texas Crim. Rep., 599, and other cases.

**4.—Same—Rule Stated—Corpus Delicti.**

While the statutes require that the body of the deceased, or portions thereof which are found, must be sufficiently identified to establish the fact of the death of the person alleged to have been killed, yet there is no attempt to indicate the character of such testimony by which the identity of the person is to be established.   If it be circumstantial, that is all that is necessary if it

sufficiently identifies the remains of the portions thereof found, as those of the deceased. Following Taylor v. State, 35 Texas, 97, and other cases.

### 5.—Sufficiency of the Evidence—Confession—Corroboration.

Where, upon trial of murder, the main material facts in the confession of defendant were corroborated by testimony on the trial, and the corroboration was fuller and more complete, than in other cases in which convictions were sustained, the conviction in the instant case is sustained. Following Lott v. State, 60 Texas Crim. Rep., 162, and other cases.

### 6.—Same—Circumstantial Evidence—Corpus Delicti.

The body or some portions thereof under our statutes must be found, but when a body or portion thereof is found it may be shown to be that of the alleged deceased by circumstantial evidence, and where the confession and the corroborating circumstances showed that the bones found in a well and in a post-hole were portions of the body of the deceased, and the evidence, independent of the confession, showed that he came to his death by violent means at the hands of the defendant, the conviction for murder is sustained under a proper charge of the court.

### 7.—Same—Charge of Court—Disappearance of Deceased.

Upon trial of murder, there was no·error where the court had charged that no person under the laws of Texas can be convicted of any grade of homicide unless the body of deceased, or portions of it, are found and sufficiently identified, etc., to further charge the jury that they could not consider the disappearance of the person charged to have been killed as evidence that the remains found, if any, were his, as this was a circumstance to be considered with the other facts and circumstances in the case. Distinguishing Gay v. State, supra.

### 8.—Same—Confession—Voluntary Confession—Evidence—Presumption.

Where, upon trial of murder, the court heard testimony as to whether or not the written confession of defendant was voluntarily made, and the county attorney, to whom it was made, was the only witness introduced to show that said confession was voluntarily made, and no other evidence was offered, the court did not err in admitting it in evidence, and there was no error in refusing a specially requested charge that if it was not freely and voluntarily made the jury should not consider it, as there was no such issue raised, and the testimony of the county attorney rebuts the presumption of any continuing condition of a prior involuntary confession.

### 9.—Same—Charge of Court—Confessions—Corroboration.

Where, upon trial of murder, the confession of the defendant was sufficiently corroborated, the conviction of murder was sustained, under a proper charge of the court thereon.

### 10.—Same—Evidence—Conclusion of Witness.

Where, upon trial of murder, the court permitted State's counsel to ask the county attorney, who was on the witness stand, if defendant voluntarily made and signed the written confession introduced in evidence, there was no error to overrule defendant's objection to the question on the ground that the answer would be but a conclusion of the witness.

### 11.—Same—Evidence—Portions of Deceased's Body.

Where, upon trial of murder, the issue was whether or not the pieces of bone, etc., found were those of the alleged deceased, after expert witnesses had testified that they were human bones, and after confessions of defendant had been introduced with reference thereto, there was no error in admitting in evidence the pieces of bone found.

#### 12.—Same—Evidence—Insanity—Witness Under Rule—Jailer.

Upon trial of murder, where one of the defenses was that if defendant killed deceased she was insane when she did it, there was no error in admitting the testimony of the jailer and his wife as to the acts and conduct of the defendant while in jail, and it was not necessary to place these witnesses under the rule. Following Burt v. State, 38 Texas Crim. Rep., 397.

#### 13.—Same—Instrument Used—Deadly Weapon.

Where, upon trial of murder, defendant in her confession stated that the instrument with which she struck the deceased on the temple of the head while asleep was a maul used in splitting wood, there was no error in showing by the testimony of an expert witness that such an instrument in the hands of a person the size of defendant would be deadly when used to strike a person in the manner in which it was used. Following Kugadt v. State, supra.

#### 14.—Same—Evidence—Clothes of Deceased—Trunk Found in Possession of Another.

Where, upon trial of murder, the defendant had made declarations that deceased had worn a certain suit of clothes on his trip to Fort Worth, but which was afterward found in the trunk of defendant's son, in another town, and that deceased had not gone to Fort Worth, there was no error in admitting in evidence said trunk.

#### 15.—Same—Evidence—Articles of Wearing Apparel, etc.

Upon trial of murder depending upon circumstantial evidence, there was no error in admitting in evidence the teeth, buttons and all the articles found where defendant pointed out to the witness as the place where she burned the body of deceased.

#### 16.—Same—Argument of Counsel.

Where, upon trial of murder, an objection was sustained to the argument of State's counsel with reference to the testimony of the sheriff that he had promised to befriend the accused, and the jury was instructed not to consider such remarks, there was no reversible error.

#### 17.—Same—Evidence—Immateriality of Testimony.

Upon trial of murder, there was no error in the court's refusal to permit a defendant's witness to testify that, before the marriage of defendant and deceased, the witness advised deceased not to marry defendant, and that since that time deceased had told witness he wished he had taken his advice.

#### 18.—Same — Evidence — Insanity — Non-expert Testimony — Opinion of Witness.

Upon trial of murder, where defendant had introduced testimony to support her plea of insanity and to show her mental condition a number of years prior to the homicide, there was no error in admitting in rebuttal testimony that the witness had met defendant and deceased and in writing insurance and talking with deceased defendant interpreted deceased's remarks to him and his remarks to deceased, and that at this time he noticed nothing unusual about defendant; the witness not giving his opinion as to defendant's insanity.

#### 19.—Same—Expert Testimony—Remarks by Judge.

Where, upon trial of murder, the defendant introduced a witness as to defendant's mental condition and upon the question of insanity, and the witness himself testified that he was not an expert upon insanity, etc., there was no reversible error in the remarks of the court thereon to the effect that when a witness comes on the stand and declares he is not an expert that he could not testify as an expert on anything; no injury having been shown to defendant.

**20.—Same—Indeterminate Sentence Law.**

Where the lower court had failed to enter the judgment-sentence under the indeterminate sentence law, the proper change will be made in the judgment on appeal.

**21.—Same—Misconduct of Jury—Affidavit—Practice.**

Where defendant attached an affidavit to the motion for new trial, to the effect that one of the jurors had expressed an opinion before he was taken on the jury that he would hang the defendant, and the court struck out said affidavit on motion of the State's counsel on the ground that the testimony of affiant should be heard, and defendant asked for no process for said affiant, although he lived close to the courthouse, and did not ask for the postponement of the hearing until his attendance could be secured, and besides said juror testified that he had never made such remarks to affiant or any one else, and also other testimony in support of the juror's testimony was introduced, there was no reversible error.

**22.—Same—Misconduct of Jury—Allusion to Defendant's Failure to Testify.**

Where, upon motion for new trial, on a complaint of misconduct of the jury, the court was fully justified in finding as a fact that there was no discussion among the jurors of defendant's failure to testify, but only an incidental reference made to the matter by one of the jurors propounding a question in the presence of two others of the jurors, and which elicited no information or discussion among the jurors, there was no reversible error. Following Cooper v. State, 72 Texas Crim. Rep., 266, and other cases.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Jennings & Higgins* and *Oltorf & Oltorf,* for appellant.—On question of corpus delicti: Follis v. State, 51 Texas Crim. Rep., 186, and cases cited in opinion.

On question of voluntary confession: Briscoe v. State, 11 S. W. Rep., 113; Cain v. State, 18 Texas, 387; Simon v. State, 37 Miss., 288; 12 Cyc., 629; Branch's Crim. Law, 53.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of the murder of her husband, and her punishment assessed at imprisonment in the penitentiary for life.

We will not take up the contentions of appellant in the order presented in the bills of exception and in the motion for a new trial, but instead in the order presented in the able and exhaustive brief filed by appellant's counsel.

The first proposition, under the first three assignments, is that before a person can be convicted of a homicide the body of the person charged to have been killed, or portions thereof, must be sufficiently identified to establish the fact of the death of said person, which fact can not be

established by an extra-judicial confession alone.  The second proposition is, before a conviction can be sustained in a homicide case, there must be sufficient evidence that the person alleged to have been killed came to his death by some criminal act or agency of another, an extra-judicial confession alone not being sufficient to establish this element of the corpus delicti.  These propositions of law we do not understand the State contests, but admits the soundness of each of the propositions, the disagreement being as to whether the evidence adduced on the trial meets the measure of proof required to establish the corpus delicti,—that is, (1) that a crime has been committed (the death of Edward Wilganowski) by some criminal agency; and (2) that his death was caused by appellant and no other person.  It may, and will be conceded, that the oral confession made to the sheriff, the admissibility of which is not contested by appellant, if sufficient, would prove that Edward Wilganowski is dead; that he was killed by appellant under such a state of facts as would render her act an unlawful one. But, in law, as contended by appellant, these facts can not be established by her confession alone; there must be other evidence tending to show that Wilganowski is dead, and was killed by appellant under circumstances rendering the act criminal.  But under all the authorities, of this day and time, such proof may be made by circumstantial evidence as well as by positive proof.  Outside of the confession of appellant, there is no direct positive proof that Wilganowski is dead, or that if dead, appellant killed him.  To make this proof the State relied upon circumstantial evidence, and the sufficiency of this proof is what, in the last analysis, appellant contests.  Now, ignoring both the oral and written confession, what would the evidence show?  Appellant and Edward Wilganowski were husband and wife, and lived together alone in Marlin, Texas.  It was the custom of both to attend the Catholic church on Sunday.  The alleged deceased person failed to attend church two Sundays in succession, when his sons, by another wife, approached appellant at the church and asked her where their father was, and she told them he had gone to Fort Worth to visit a daughter residing there. During the several conversations had she described particularly how he was dressed, and stated that he had carried $600 with him.  A son of deceased went to Fort Worth and learned that his father had not been to visit his daughter, and upon the return of this son to Marlin appellant suggested he must have been killed by a hack driver in Fort Worth for his money.  This son finding the shoes appellant said deceased had worn to Fort Worth in the house at Marlin, it aroused his suspicion.  Appellant then said she was mistaken, that deceased had purchased a pair of new shoes and had worn them on the trip to Fort Worth.  Upon further investigation a trunk belonging to deceased was found in the possession of a son of appellant (by a former marriage) in Bryan, and at this place was found the suit of clothes appellant had stated was worn by deceased to Fort Worth.  This son, a daughter and appellant were all arrested after the clothing was found and placed in jail in Marlin.  While they were in jail a search was made of the

premises occupied by appellant, and sewed up in one pin cushion was found something over seven hundred and fifty dollars. There is in the record (outside of the confession) no evidence of how appellant came into possession of the money and why she sewed it up in a pin cushion. There was also found sewed up in another pin cushion the watch chain and pendant cross worn by deceased in his lifetime, and the cuff buttons usually worn by him. In an old well near the house was found bones, which the experts testify are human bones, and also in this well was found a watch badly burned, and the metal parts of a pocketbook. As to this watch found in the well with these human bones, a son-in-law of appellant, J. J. Blaskey, identified positively the watch found in the old well as the watch given by him to deceased. He says he recognized it by the crown and by the engraving on the side—then going into details on cross-examination. The metal clasps of a pocketbook, found also in the well, were identified by the son of appellant as belonging to appellant. This identification is weakened on cross-examination by the witnesses admitting there might be other pocketbooks like the one found, but they are positive their father had one like it. Human bones are also found in a post hole not a great distance from the old well. Witnesses testify to seeing a fire in the yard of appellant and deceased in the night-time about the date of the disappearance of the deceased, and the watch, pocketbook and bones all bear evidence that they had been in a fire. There are other circumstances in evidence, but we do not deem it necessary to detail them.

Appellant relies principally on the cases of Follis v. State, 51 Texas Crim. Rep., 186, and Gay v. State, 42 Texas Crim. Rep., 450, as sustaining his contention that the above detailed facts and circumstances are not sufficient, in connection with the confession, to establish the corpus delicti. In the Gay case the evidence was held to be insufficient as nothing was shown except that Lindemann could not be found, and that only charred bones and some hair were found. Lindemann was shown to have light hair, sprinkled over with gray hair. In the hair found none of the strands were gray, and the court holds this excluded the idea that this was Lindemann's hair. Nothing was found that could be or was identified as belonging to Lindemann, and in the absence of some showing that the remains were those of Lindemann, the court held that it was not established that it was Lindemann's body. In that case there was no confession to aid in establishing the corpus delicti as there is in this case, and that case is no authority to support the contention that the evidence in this case would not sustain the verdict.

In the Follis case, supra, there was a confession, and the testimony of an accomplice. It was held this would be sufficient to sustain the corpus delicti if the accomplice had identified the remains of the deceased, but this the court says his testimony wholly failed to do, but it does say the accomplice testified the decomposed corpse had on shoes with eyelets similar to those worn by McDonald. The court says this would be rather meager testimony upon which to base a finding, as

would the testimony in this case if we only had the clasp of the pocket-book, which it may be admitted the evidence only shows that deceased had one like it. But in addition to such evidence, we have in this record the positive testimony of J. J. Blaskey, who testifies that the watch found with the burnt and charred human bones was the watch of Edward Wilganowski—that he knew it; had worn it himself, and made his father-in-law a present of the watch. In the Follis case the court seems to hold that the evidence that the shoes were similar might be sufficient if there was evidence that the deceased came to his death by violent means. What have we in this case? Two people living on the place—one living and on trial, the other missing. In an old well on the place are found the charred bones of a human body, and in a post hole are found other bones of a human body, also charred. All evidence shows that those bones had been in a fire and burned. This is evidence that violence was used to a human body. Now, whose body? With the human bones is found the metal clasp of a pocketbook, like the one owned by Edward Wilganowski when last seen, and in addition thereto is found the case of a watch identified positively as the watch of appellant's husband. Whose body was it found burned? The evidence, exclusive of the confession, points unerringly to the fact that it was the body of Edward Wilganowski. No other conclusion could be arrived at under this testimony, and the testimony does not suggest, in the slightest degree, that these human bones might be the bones of any other or different person. No other person lived on the place than appellant and Edward Wilganowski. And some of the bones bore evidence they had not been long in the old well and post hole, for the sheriff testifies that a portion of the bones when found had some dead stuff, a slimy something that smelled awfully bad, on them. Does the testimony point to the person who burned this body exclusive of the confession? The watch of deceased (if we now may so term him) was found with the human bones. The chain of this watch is found in the possession of appellant sewed in a pin cushion, with a cross belonging to deceased attached thereto. In this pin cushion is also found the cuff buttons belonging to deceased. The testimony of deceased's renters show that he was in possession of money. Money, for which the testimony offered in behalf of appellant, does not seek to account, is found in her possession sewed up in another pin cushion. She said before her arrest deceased had $600 in his possession. This and more is found in her possession, and the testimony introduced in her behalf gives no explanation of how she came into possession of it. These circumstances point to appellant, and her alone, as the person who burned the body. We are inclined to think, if the confession of appellant had not been introduced and all these facts and circumstances introduced in evidence, a jury would have been authorized to find that the remains discovered in the well and post hole were those of Edward Wilganowski, and to find that he came to his death at the hands of appellant, when no explanation is given as to her possession of the dead man's property, and the explanation she gave as to his whereabouts is

shown to be untrue. No other person is shown to have been missing in the community; no other person is shown to have been in position to have burned a human body at this old well, within a few feet of the back door of appellant's residence. No fire could have been maintained there without her knowing it. She and she alone is in possession of the missing man's watch chain and charm, cuff buttons and money. She offers no testimony to explain these matters, and the human mind would be driven irresistibly by these facts and circumstances to the conclusion that Edward Wilganowski was dead, and that he came to his death at the hands of appellant. The testimony excludes every other reasonable hypothesis. But it is not necessary to prove all elements of the corpus delicti independent of the confession. The confession may be considered along with other facts and circumstances in evidence, and if the evidence, independent of the confession, tends to corroborate the confession, and convinces the jury that the confession is a true statement of how the homicide occurred—is corroborated by independent evidence in material particulars, the evidence is sufficient to sustain a verdict that the accused is guilty of the crime charged. This question was ably and learnedly discussed by Judge Hurt in the case of Kugadt v. State, 38 Texas Crim. Rep., 681, in which the authorities are reviewed, and the rule established in this State that it is not essential to establish the corpus delicti by testimony independent of the confession, but that the confession may be considered in connection with the other facts and circumstances in evidence, and if the circumstances related correspond in some points with those proven to have existed, this may be evidence sufficient to support a finding of the jury. Full proof of the body of the crime, independent of the confession, is not required and in many cases slight corroborating facts have been held to be sufficient. Such supplemental evidence need not be conclusive in its character. Judge Hurt further adds: "Now, with reference to the corpus delicti, and recurring to the summary of the facts heretofore stated, we would observe that the rule of law is well settled that, before a conviction can be maintained in any criminal case, the corpus delicti must be established. In a case of culpable homicide, Mr. Wharton says: 'It is essential for a conviction for any degree of culpable homicide—first, the deceased should be shown to have been killed; and, second, this killing should have been proved to have been criminally caused. Unless the corpus delicti in both these respects is proved, a confession is not, by itself, enough to sustain a conviction.' Whart., Hom., sec. 641. See also Hunter v. State, 34 Texas Crim. Rep., 599, and authorities there cited. We would further observe, in this connection, that, before a person can be convicted of felonious homicide, the death of the deceased must be shown to have been caused by the act or agency of such party; and in this State it is enacted by statute that 'no person shall be convicted of any grade of homicide, unless the body of the deceased or portions of it are found and sufficiently identified to establish the fact of the death of the person charged to have been killed.' See Penal Code, 1895, art. 654. Now, it

will be noted that, while the statute requires that the body of the deceased, or portions thereof which are found, must be sufficiently identified to establish the fact of the death of the person alleged to have been killed, yet there is no attempt to indicate the character of testimony by which the identity of the person is to be established. The statute says that the remains must be sufficiently identified; that is, we take it, the statute requires that the proof be of a legal character. Nowhere is it said that the testimony must be positive. If it be circumstantial, that is all that is necessary if it sufficiently identifies the remains or the portions thereof found as those of the deceased. See Taylor v. State, 35 Texas, 97; Wilson v. State, 41 Texas, 320, 43 Texas, 472; Brown v. State, 1 Texas Crim. App., 154; Jackson v. State, 29 Texas Crim. App., 458; State v. Davidson, 30 Vt., 377; McCulloch v. State, 48 Ind., 109; State v. Williams, 52 N. C., 466, reported in 78 Am. Dec., 248, and note 2, at page 253; Campbell v. People (Ill. Sup.), 42 N. E. Rep., 123; State v. Martin (S. C.), 25 S. E. Rep., 113; Webster v. Com., 5 Cush., 386; 1 Bish. Crim. Proc., sec. 1057 et seq.

"The above cases not only show that the body or portions thereof may be identified as that of the deceased by circumstantial evidence, but the corpus delicti itself may also be proved by this character of testimony."

In addition to the facts above detailed, proven in addition to the confession, the State introduced the written confession of appellant, which states:

"I, Katy Wilganowsky, being under arrest and charged with the offense of murder and being warned and cautioned by Tom Bartlett, county attorney, that I do not have to make any statement or confession at all in reference to said charge and accusation against me, and that any statement which I might make in reference to said charge against me may be used in evidence against me on my trial for the offense concerning which my statement and confession is herein made, do freely and voluntarily and without compulsion or persuasion make to the said Tom Bartlett the following statement and confession: I came to Marlin about six months prior to the time I married Ed Wolganosky. I married him about sixteen months prior to the killing hereinafter related. About the first of February, 1915, my husband and I began to have trouble about his refusing to furnish me with sufficient clothing and food and his refusing to permit my children, by my first husband, to visit me. I told him that I was not satisfied with the way he was treating me, and ask him to pay me for the time that I had worked for him during the past sixteen months. I told him that, if he would pay me for my work, I would leave him. He said he was going to give me shit. We continued to quarrel for the next two weeks. On or about the 15th day of February, about 6 o'clock in the evening, I found him asleep, sitting in a chair by the kitchen fire. I got a piece of stove wood, which had been used for a mawl in splitting wood. It was very hard and heavy and was trimmed at one end so as to form a handle. I found it in the yard. I came up behind him with the stick in my hand. His head was inclined to one side leaning

on the chair. I hit him as hard as I could, in the temple, with the stick, and he dropped over on the floor dead. I put some water on him in an effort to bring him to life. He did not show any signs of life and I left him there on the floor until it was dark. That night I drug him out of the house into the yard and covered him up with hay. 1 got this hay out of the stable. I left him there all that night. The next morning about 7 o'clock I got some dry hay from the stable and built a fire over him. I poured kerosene oil over his body and over the hay and put a match to it. I added kerosene, hay and dry planks to the fire during the day. I also kept the fire up the next night and the next day. After I had burned him up, as nearly as I could, I took what remained of the bones and the ashes and poured them in some post hole where an old fence had been removed on a lot just across the alley from my house. I then told the people that he had gone to Fort Worth. I killed him because I was mad at him and because he would not give me any money. I was so mad at him when I hit him I did not care whether I killed him or not.

"After I killed him I found $600 belonging to him in the seed house when I was feeding the cow. I knew he had this money before I killed him, and that it was about the place somewhere, but I did not know where it was. I took the $600 and put it with a hundred and sixty dollars which I had in my trunk and sewed the whole amount up in a pin cushion and put it in between some old clothes in a basket. I burned his watch and hat after I had burned his body. I knew that, if the people saw his hat and watch there, they would know that he was not in Fort Worth. I did not burn the chain on the watch because it had a cross for a charm and I did not wish to burn the cross. I am a Catholic."

It will be noticed that the main material facts in this confession are corroborated by testimony adduced on the trial, and in the case of Lott v. State, 60 Texas Crim. Rep., 162, the corroborating testimony is not near so full and complete as in this case, and yet the verdict was sustained by this court in an opinion by Judge McCord, in which all members of the court concurred. Many other cases could be cited in the decisions of this court, but the holding of this court is sufficiently shown in the Kugadt case, supra, and Lott case, supra, and the opinions in the Gay and Follis cases cited by appellant are in nowise in conflict with the rules of law as announced in the Kugadt and Lott cases. Not only is this the rule in this State, but our Assistant Attorney General has compiled an exhaustive list of authorities from other jurisdictions in which it is demonstrated that the evidence in this case is ample to sustain the corpus delicti. See Michie on Homicide, vol. 2, pp. 1118-1121, in which it is stated that "the finding of fragments of a human body, such as tufts of hair, which are positively identified as part of the body of the supposed victim, or of metallic articles, which are similarly identified as articles worn by him," is sufficient identification of the remains. Williams v. State, 46 Ore., 287; Henderson v. State, 85

S. W. Rep., 576; People v. Palmer, 109 N. Y., 110; State v. Patterson, 73 Mo., 695; Best on Evidence, sec. 446; Calder v. State, 59 Pac. Rep. (Mont.), 903; Williams v. State, 50 N. E. Rep. (Mass.), 1035; Novak v. State, 79 N. W. Rep. (Iowa), 465, and authorities cited in these opinions. Under our statute, the body or some portions thereof must be found, but when a body or a portion thereof is found it may be shown to be that of the alleged deceased by circumstantial evidence is now recognized by all the authorities, and under this rule of law the confession and the corroborating circumstances show that the bones found in the well and in the post hole were portions of the body of Edward Wilganowski, and the evidence, independent of the confession, would show that he came to his death by violent means at the hands of appellant, and when there is a confession, as in this case, we think it establishes all the elements of the corpus delicti beyond question.

The court, at the request of appellant, instructed the jury: "The law of Texas provides that no person shall be convicted of any grade of homicide unless the body of the deceased, or portion of it, are found and sufficiently identified to establish the fact that the death of the person charged to have been killed. The identification may be made by circumstantial evidence, but it must be beyond a reasonable doubt." Appellant insists that the court in this case should have also instructed the jury as requested by him: "And the jury can not consider the disappearance of the person charged to have been killed as evidence that the remains found, if any, were his." On this proposition he refers to the case of Gay v. State, hereinbefore cited, but that case does not sustain the proposition, that such limitation should be placed upon the proof of disappearance. It is true that proof of disappearance alone is insufficient to establish the death, but it is a circumstance to be considered along with the other facts and circumstances in evidence in passing on that issue, and such a charge would not only be upon the weight to be given the testimony but would exclude testimony legitimately before the jury to be given such consideration as they thought it entitled to in connection with the other facts and circumstances.

The written confession is hereinbefore copied in full. When appellant objected to its introduction, the court excluded the jury and heard evidence as to whether or not it was voluntarily made. Only one witness was called, County Attorney Bartlett. He testified positively that the warning required by law was given and the confession freely and voluntarily made. No other evidence was offered, therefore the court did not err in admitting it. Appellant insists, if the court did not err in admitting it, then the court should have given his specially requested charge, that if it was not freely and voluntarily made, the jury should not consider it. Where there is evidence raising this issue, such a charge should be given. But is there any evidence raising the issue in this case? It is true that the oral confession made to Mr. Plott, by which the burned bones, watch and purse clasp were found, was obtained by statements made to her by the sheriff, that he, the sheriff, was her

friend, and he would render her any assistance he could, and if the bones, watch, etc., had not been found at the places pointed out by appellant, such oral confession would not have been admissible. Appellant insists that this condition having been shown to exist at the time the oral confession was made, the law would presume that the condition continued until the next day when the written confession was made to the county attorney, Mr. Bartlett. The law might and doubtless would so presume if there was no testimony offered on that issue. But the testimony of Mr. Bartlett rebuts such presumption, and appellant offered no testimony raising such an issue after Mr. Bartlett, by his testimony, had excluded the idea that such condition existed at the time he took the written confession. Such presumption only arises when the State's testimony has not excluded the idea. The cases cited by appellant hold: "It is well settled as a presumption of law that the influence of threats or promises once made continue to operate until rebutted by proof clearly showing it had ceased to operate." This rule of law is not questioned, and but for the testimony of Mr. Bartlett the charge should have been given, but after his testimony no such presumption was in the case.

The court instructed the jury: "You are further charged that before a conviction can be had in this case the State is required to prove two things:

"First, the death of Edward Wilganowski by some criminal agency, and, second, that his death was caused by the defendant, Kate Wilganowski, and none other, in the manner charged in the indictment; and unless you believe from the evidence beyond a reasonable doubt that the said Edward Wilganowski is dead, and that his death was caused by some criminal agency, and that the defendant, Kate Wilganowski, and none other killed him as charged in the indictment you will acquit her, and these questions it is your exclusive province to determine from all the facts and circumstances which are in evidence before you.

"And in this connection you are instructed that you can not convict the defendant on her confession alone, and unless you believe from the evidence beyond a reasonable doubt that there are such extrinsic corroborating facts and circumstances in evidence as will, taken in connection with said confession, if any, produce conviction in your minds of the defendant's guilt, you will acquit her."

Having thus instructed the jury, it was not necessary to give the special charge requested on this issue. It is true a confession made out of court will not alone support a conviction, as contended by appellant, and the court so instructed the jury in the charge. The corroborating evidence, we think, fully sufficient to support the verdict.

The court permitted State's counsel to ask the county attorney "if appellant voluntarily made and signed the written confession introduced in evidence." This was objected to on the ground that the answer would be but a conclusion of the witness. Appellant cites no authorities as sustaining such contention, and for a person to state whether or not

.an act was a voluntary one we do not think is a conclusion, but a state-ment of a fact.

The next contention is, that the court erred in admitting in evidence the pieces of bone found, alleged to be a portion of the skull, patella or .knee cap,, ankle bone and other pieces of bone, on the ground that it had not been proven they were human bones, and if that fact had been proven, it had not been proven they were the bones of Edward Wil-.ganowski. One of the issues being tried was whether or not they were the bones of Wilganowski, and under the evidence the jury found they were. And we think the testimony of the doctors, introduced as wit-nesses, clearly demonstrated they were human bones. The confession ·of appellant would also show they were human bones, and the bones of Edward Wilganowski.

One of the defenses was, that if appellant killed deceased she was insane when she did it. The .court in Burt v. State, 38 Texas Crim. Rep., 397, held that it was admissible to prove by the jailer the acts .and conduct of one on trial while in jail, on this issue, therefore the ·court did not err in admitting the testimony of Mr. and Mrs. Reese. Nor did the court err in permitting Mr. Reese to testify on this issue, .although he had not been placed under the rule. He was jailer, and had charge of appellant, and being an officer of the court, the court could not be required to place him under the rule when he would be called to testify only on the issue of insanity based on conduct of .appellant while in jail.

Appellant in her confession stated the instrument with which she :struck the blow was a maul used in splitting wood. State's counsel ·described such an instrument as appellant in her confession said she ·used, and asked Dr. Strite if such an instrument in the hands of a person the size of appellant would be deadly when used to strike a ·person on the temple while asleep. The witness answered that such :an instrument would likely cause death under such circumstances. This was an issue in the case, and was by the court submitted to the jury, .and there was no error in admitting the testimony in this case. Kugadt v. State, 38 Texas Crim. Rep., 681.

The appellant contends that the court erred in admitting in evidence ·the trunk found in the possession of appellant's son at Bryan. As the suit appellant said deceased had worn on the trip she said he had made to Fort Worth was found in this trunk, there was no error in admitting ·the trunk.

The teeth, buttons and all the articles found where appellant pointed ·out to the sheriff as the place she burned the body of deceased, were properly admitted in evidence. This evidence would all tend to cor-roborate her confession.

By another bill it is made to appear that the county attorney in his .argument to the jury said, referring to the testimony of Sheriff Plott, that he had promised to befriend the woman, "Didn't Plott take her to Waco to save her from the wrath,"—when he was stopped by objec-.tion of appellant's counsel, which objection was sustained by the court,

and the jury instructed not to consider such remarks. As the objection was promptly sustained, and the county attorney not permitted to complete the sentence, the jury also being instructed not to consider such remarks, the bill presents no error.

The court refused to permit Peter Bayer to testify that before the marriage of appellant and deceased, he had advised deceased not to marry appellant, and since that time deceased had told him he wished he had taken his, Bayer's advice. This would have tended to throw no light on this transaction, and the court did not err in his ruling.

The appellant introduced evidence tending to show that appellant was insane, and called witnesses to show her condition a number of years prior to this homicide. To rebut this testimony, among other witnesses, the State called W. T. Goode, who testified that he had met appellant and deceased; that he was writing insurance, and in talking with deceased, appellant interpreted deceased's remarks to him and his remarks to deceased; that at this time he noticed nothing unusual about her. He was not asked, nor permitted to give his opinion as to whether she was sane or insane, but only permitted to detail the transaction, and that he noticed nothing unusual about her. The acts and conduct of one is permitted to be given in evidence on this issue to aid the jury in determining the issue of insanity. Had the court permitted the witness to express an opinion as to appellant's sanity or insanity, appellant's objection would perhaps have been well taken, as Mr. Goode's acquaintance was too limited to express an opinion.

Bill No. 35 reads as follows: "Be it remembered that on the trial of the above entitled cause, the defendant introduced as a witness Dr. A. L. Munrick, who testified that he had been practicing medicine in Bryan, Texas, for seventeen years; that he attended medical college three years, graduated at Fort Worth; took a post-graduate course in Chicago in 1913, one in New York in 1906, one in New Orleans in 1907; that he was at the Manhatten, New York City; Polytechnic in New Orleans; that he took a double course in Chicago and New Orleans; that he knew Lena Paraduski and had known her for seventeen years; that she lost her mind during the present year and died insane within a short time; she had always been very quiet in her ways and never had much to say; that he knew Mary Wozniak and family and had done their practice for fourteen years; that the daughter of Mary Wozniak is subject to epileptic spells, did not seem to be exactly mentally unbalanced; that he was not an expert on epilepsy and therefore could not exactly tell where the seat of that disease is; it affects different parts of the brain, generally in the face of the brain I suppose; it is a mental disease; that the best authorities claim that mental weakness or insanity is hereditary to a great extent; that that weakness runs in certain families. Then counsel for the State asked the witness this question: 'If the father is insane the whole family is insane?' Witness answered, 'Not necessarily.' Counsel for State: 'Do you pretend to know all about that?' Witness: 'That is what the authorities say. I am just stating them.' Counsel for State: 'I think the au-

thorities would be best evidence.' The court: 'I think when the witness comes on the stand and says that he is not an expert he can't testify as an expert on anything.' Counsel for defendant: 'If he shows that he has been instructed about this, that is, according to what certain authorities state about a certain thing,—'. The court: 'If he has gone and got some books and read them, he can go and get them.' Counsel for defendant: 'I think his declaration along that line is competent.' The court: 'All those books are written in English.' Counsel for defendant: 'Note our exception.' The effect of the ruling made by the court as shown was to exclude and nullify the previous testimony on direct examination to the effect that the best authorities regarded insanity or mental weakness as a hereditary disease, which defendant contends was competent testimony coming from a witness of the profession and general medical instruction and practice as the testimony showed Dr. Munrick to be. The testimony of other witnesses showed that the Lena Paraduski referred to by Dr. Munrick was a half-sister of the defendant, and that the Mary Wozniak whose daughter was stated to be an epileptic is a half-sister of defendant; that a half-brother named Jacob Goretski had died in an asylum of this State about twenty years ago after being there two years. Defendant's witnesses Fountain and Barron testified that in their opinion the defendant was weak-minded or half-witted, and under some circumstances would not know the difference between right and wrong and could not control herself. There being evidence of insanity in defendant's family, the ruling of the court in the connection shown by this bill was harmful to defendant's defense of mental irresponsibility."

This is all of the bill, and we fail to see how the remarks of the court could have been hurtful to appellant, as the witness had testified, "I am not an expert in the disease of epilepsy, and, therefore, I could not tell you where the seat of the disease is. I don't pretend to be an expert on insanity. I don't pretend to be an expert on hereditary diseases. This is a very intricate study and hard to find out about. All I can go by is just the authorities we had." After the witness himself had so testified, the remarks said to have been made by the court could have had no more tendency to weaken the testimony of the witness than his own testimony had.

Under the indeterminate sentence law the sentence will be so reformed as to read that appellant be confined in the penitentiary for her natural life or for not less than five years, and the proper entry will be made in the judgment herein entered, and be certified to the trial court for observance.

An affidavit of John Parsons was attached to the motion for a new trial in which Mr. Parsons swore that about three weeks before the trial he heard B. P. Walker (who served as a juror in this cause) say, "they had better not take him on the jury because if they did he would hang the old bitch." He said Walker McDade was also present when Walker made the remark. On the hearing of the motion for a new trial appellant offered this affidavit in evidence, but the court excluded

it. Our procedure provides that the court may hear evidence by affidavit or otherwise, and the State was insisting that Parsons be called that he might be cross-examined. When the court excluded the affidavit appellant did not ask process for Parsons, although it is shown he lived but three miles from the courthouse. Appellant, to have shown proper diligence, when the court excluded the affidavit, should have asked for process for Mr. Parsons, and that the hearing be adjourned until his attendance could be secured. This he did not do, but if this was all the record disclosed we would feel that perhaps appellant had not had a trial by a fair and impartial jury, but when appellant offered the affidavit, the State called B. P. Walker and he testified that he had never made any such remarks to Mr. Parsons, nor anyone else. That he had never expressed an opinion of any character, and had none when accepted on the jury. Walker McDade, whom the Parsons' affidavit said was present when he says the remark was made by Walker, was also called as a witness by the State, and he testified that Walker made no such remark. Under such circumstances we would not feel authorized to hold that the court erred in refusing to grant a new trial on this ground of the motion.

The only other ground presented in appellant's brief is that the jury discussed the failure of defendant to testify. All the jurors (except two who were not present on the hearing of the motion) testify that before any mention was made by anyone of the failure of appellant to testify, that the jury had all voted, agreeing that she was guilty, and that eleven of them had voted for life imprisonment, and one, B. P. Walker, had voted for the death penalty. Seven of these ten jurors swear that at no time was the failure of defendant to testify mentioned or discussed in their presence. The other three, Messrs. Walker, J. E. Conner and J. A. White, say that the jury had agreed on the guilt of appellant, and eleven had voted for life imprisonment, and one for the death penalty, when the following occurred: Mr. Conner says that while he and Mr. Walker were in the toilet, Mr. Walker remarked, "I wonder why it was that they did not put Mrs. Wilganowski on the stand." That he replied, "I do not know." That this was all that was said, and that there was no discussion of the matter. Mr. White testified that he heard Mr. Walker make the remark, "he wondered why the defense did not put Mrs. Wilganowski on the stand." That he heard no reply to such remark, and there was no discussion of the matter. Mr. Walker had made an unsworn statement to appellant's counsel that the failure of the defendant to testify had been discussed in the jury room before the punishment was agreed on, but when placed on the stand he testified there was no discussion of the matter, but only a remark similar to that testified to by Messrs. Conner and White. This shows a mere incidental reference to the matter by the only man on the jury who had voted for the death penalty, and who later agreed with the others on life imprisonment in the penitentiary as the punishment. Of course, if as stated by Mr. Walker to appellant's counsel, in the unsworn statement, the failure of defendant to testify had been dis-

cussed, we would not inquire whether or not injury was shown. But Mr. Walker, when sworn, changes his statement and admits there was no discussion of appellant's failure to testify. Two of the jurors say that Mr. Walker made an inquiry why they had not placed appellant on the stand, but no one vouchsafed him any information in answer to the question, and that the matter was not discussed. The other jurors say they did not hear the question propounded by Mr. Walker, and the matter was not mentioned nor referred to in their presence. We can not say Mr. Walker's unsworn statement to appellant's counsel should be accepted instead of the testimony of all the other jurors. We think the court was fully justified in finding as a fact there was no discussion of appellant's failure to testify, but only an incidental reference made to the matter by Mr. Walker propounding a question in the presence of two jurors, which elicited no information or discussion, and it has always been held by this court that a mere incidental reference to the failure of the defendant to testify does not present reversible error. Cooper v. State, 72 Texas Crim. Rep., 250, 162 S. W. Rep., 364, and authorities cited; Smith v. State, 52 Texas Crim. Rep., 344, 106 S. W. Rep., 1161.

There are other bills of exception in the record, but they are not presented in the exhaustive brief of appellant, and we do not consider it necessary to discuss them. However, we will state we have read each of them and do not think any of them present any error for which the cause should be reversed

The judgment is reformed and affirmed.

*Affirmed.*

[Rehearing denied December 22, 1915.—Reporter.]