**1. Intoxicating liquors ⚖=236(20)—Evidence of transporting held sufficient.**

Evidence *held* sufficient to support conclusion that defendant was transporting intoxicating liquors.

**2. Witnesses ⚖=240(4)—Question, "Did they have any packages? " not leading.**

Question, "Did they have any packages? " is not leading.

**3. Intoxicating liquors ⚖=233(1) — Question not immaterial or irrelevant to transportation.**

Question, "Did they [defendant and his companion] have any packages? " *held* not immaterial or irrelevant on prosecution for transporting intoxicating liquor.

**4. Witnesses ⚖=248(2)—Answer not objectionable as not responsive.**

Witness having testified that sacks contained whisky, his answer, "The whisky; yes," to the question whether defendant hit the sacks against a tree, was not objectionable as not responsive.

Appeal from District Court, Cooke County; C. R. Pearman, Judge.

Terry Banks was convicted of violating the liquor laws, and appeals.　Affirmed.

Culp, Culp & Culp, of Gainesville, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

LATTIMORE, J.　Appellant was convicted in the district court of Cooke county of transporting intoxicating liquor, and his punishment fixed at two years in the penitentiary.

[1] Two witnesses testify for the state that on the occasion in question they saw appellant and another party with two sacks on their backs, going from the woods, and that, when appellant discovered said witnesses, he and his companion proceeded to strike their two sacks against trees and broke the containers that were in them. The state witnesses went at once to the place and found, as they testified, broken fruit jars and sacks, from which whisky was dripping and running.　The witnesses testified that the liquid which had been in the containers was whisky.　Appellant testified that he and Roy Brackin went out in a car with Bert Morganson, on the occasion in question, to a point near where the officers later arrested him.　There they left the car and went down in· the woods and found two sacks.　They picked up the sacks and started to go back over to the car and saw the officers coming; and that Roy hit his sack against a tree and told appellant to hit his, which he did.　He averred that he did not know what was in the sacks.　We think the facts sufficiently supported the conclusion of the jury that appellant and his companion transported intoxicating liquor.

[2, 3] There is a bill of exceptions complaining of the action of the court in permitting the state's attorney to ask a witness, referring to appellant and Brackin, "Did they have any packages?" to which the witness answered, "They had a sack apiece on their shoulders."　We are unable to perceive how this question was leading, or how it referred to a matter that was either immaterial or irrelevant.

[4] Another bill complains that one of said witnesses, who was asked by the state's attorney if appellant and Brackin hit the sacks against a tree, replied, "The whisky; yes."　We see no reasonable ground for objecting to this upon the proposition that the answer was not responsive.　The witness had testified that the sacks contained whisky.　By another bill of exceptions, complaint is made that a witness testified that when he went up to where the sacks had been struck against a tree he smelled something that smelled like whisky.

Being of opinion that the record does not evidence any error in the trial of the case, the judgment will be affirmed.

---

## MOHLER v. STATE.　(No. 8528.)

(Court of Criminal Appeals of Texas.　Oct. 15, 1924.)

**1. Criminal law ⚖=737(2)—Question of venue held one of fact for jury under proper instruction.**

In prosecution for murder, where testimony for state was that deceased and accused were last seen in county in which venue was laid, and were going to place in another county, and deceased was not seen alive thereafter, and his body several months afterward was found in third county, question of venue was one of fact for jury under proper instruction.

**2. Criminal law ⚖=594(1)—Refusal of continuance for absence of witnesses held error.**

In prosecution for murder based on circumstantial evidence, in which accused, to explain possession of deceased's car after homicide, expected to prove that prior to killing he had considerable money, and had witnesses residing out of county subpœnaed eight days before time set for trial, refusal of motion for continuance to obtain witnesses was error.

**3. Criminal law ⚖=361(1) — Each party has fundamental right to introduce relevant testimony to contradict, explain, or minimize force of adverse testimony.**

Right of each party to introduce relevant testimony to contradict, explain, or minimize

force or effect of adverse testimony is fundamental.

**4. Homicide ⬠169(2)—Fact that accused before homicide possessed considerable sum of money held relevant, to explain possession of deceased's property.**

In prosecution for murder based on circumstantial evidence, relevancy of fact that accused who was found in possession of deceased's car, which he claimed to have bought, before homicide possessed considerable sum of money was relevant.

**5. Criminal law ⬠1092(9)—Bill of exceptions filed within extension allowed cannot be disregarded because filed after term ended.**

Bill of exceptions to refusal to continue case, filed within extension allowed by court, cannot be disregarded because filed after term ended.

**6. Criminal law ⬠537—Statements of defendant while in jail leading to discovery of incriminating facts held not obnoxious to rule concerning verbal confessions while under arrest.**

Testimony as to statements, made by defendant accused of murder while in jail, which led to discovery of memorandum book of deceased, held not obnoxious to Code Cr. Proc. art. 810, concerning use of verbal confessions while under arrest, being within exception concerning incriminating facts discovered because of alleged confession.

**7. Criminal law ⬠1169(5)—Error in admitting testimony in violation of statute concerning verbal declarations while under arrest held not cured by limitation to impeaching purposes.**

Error in admitting testimony, in violation of Code Cr. Proc. art. 810, that accused asked witness to make frame-up to contradict story given by accused's brother, held not cured by limitation to purposes of impeachment.

**8. Criminal law ⬠1064(4)—Exceptions to evidence, presented by bill of exceptions, reviewed, though not mentioned in motion for new trial.**

Exceptions to evidence, presented by proper bill of exceptions, must be reviewed on appeal, though not mentioned in motion for new trial.

**9. Criminal law ⬠363—Admission of testimony as to finding wire near deceased's body held not error.**

In prosecution for murder based on circumstantial evidence, admitting evidence that piece of wire was found at place where remains of deceased were found, on ground that it was part of res gestæ of discovery, held not error.

**10. Homicide ⬠174(2)—Admitting testimony showing peculiarities of wire found near deceased's body coincided with those of wire from place of venue held not error.**

In prosecution for murder, founded on circumstantial evidence, receiving testimony tending to show that peculiarities of wire found near body of deceased coincided with peculiarities in wire gotten from place in county in which

venue was laid, and that such peculiarities were uncommon, was not error.

**11. Homicide ⬠169(2)—Admitting testimony tending to show that accused had adopted an inconvenient method of traveling with deceased held not error.**

In prosecution for murder, founded on circumstantial evidence, which showed that deceased and accused started in automobile to certain place, and deceased was not afterward seen alive, receiving testimony touching railroad time table showing schedule of trains running between those places showing that accused had adopted more expensive and more inconvenient means of travel was not error.

**12. Homicide ⬠174(1) — Exclusion of mistreatment of accused's son by officers held proper.**

In prosecution for murder, fact that accused's son was arrested at same time as accused may have been pertinent, and exclusion of mistreatment of him by officers while in confinement was proper.

**13. Witnesses ⬠53(4)—Cross-examination of wife of accused, introduced by him as witness, held not improper.**

Under Code Cr. Proc. art. 795, where accused introduced wife as witness to identify letter introduced in evidence, cross-examination touching knowledge of recipient of letter was not contrary to statute prohibiting use of wife as witness against husband.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

R. H. Mohler was convicted of murder, and he appeals. Reversed and remanded.

Elzo Been, Asst. Co. Atty., of Rising Star, and Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

MORROW, P. J. The offense is murder; punishment fixed at death. The evidence was circumstantial. Appellant and deceased left Cisco late in the evening of August 10, 1922, the deceased stating that he was going to take a man to De Leon. The parties were seen together in the car of the deceased at Carbon, which is in Eastland county, and the deceased there inquired the way to De Leon. Gorman, also in Eastland county, was some miles distant from Carbon. The parties left Carbon after sundown. It was practically dark. The conditions were such that it would take from one to two hours to drive from Carbon to Gorman, a distance of about 10 miles.

The state's evidence shows that Maples was not seen alive at any time after leaving Carbon on the night of August 10th. The appellant testified, however, that he and Maples traveled together in the latter's automobile to a point in Coryell county near a village called Levita. Appellant had a brother residing on a farm about 3 miles from the village mentioned. According to the appel-

---

⬠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

lant's testimony, he and the deceased arrived at the farm mentioned early in the morning of the 11th of August, having spent the night together on the way; that upon their arrival at the farm of the appellant's brother, the appellant purchased from the deceased his automobile and paid him the sum of $520; that this fact was known to the brother of the appellant; that after meeting the brother, the appellant went to the home of the brother, or into his pasture, to hunt for some mules while the brother undertook to convey Maples to Levita; that the brother, after an absence of half an hour, returned to his farm and subsequently admitted to the appellant that he had killed the deceased.

Some seven months subsequent to his disappearance, the remains of the deceased were found in a pasture near the home of the appellant's brother in Coryell county. The remains gave evidence of a violent death by the crushing of the head. Near the body was found a piece of wire and the hat of the deceased. There was some testimony that a search was made along the route between Carbon, in Eastland county, and the place where the body was found; that no wire like that which was found near the body of the deceased could be found, except at a point on the road near Carbon at a creek called Nash's creek. According to the testimony there were certain peculiarities about the wire which was found near the body of the deceased, which peculiarities were not observed at any other point.

Appellant's brother testified that, on the morning of the 11th of August, his attention was attracted to the starting of a Ford car in the Whitehead pasture at a point about 140 yards from the place where the body of the deceased was afterwards found, which was about 1,100 yards from the house where the witness resided. The car mentioned was driven by the appellant, and in it he went to the home of the witness. Appellant, according to his testimony, after learning from his brother that the latter had killed the deceased, felt that he must leave the country, and did so in the car of the deceased, taking his family with him. He traveled over the country and camped out for a long time until he was finally arrested in Wilson county. This was after the body of the deceased was found. After his arrest, according to the state's testimony, appellant had a conversation with the witness Gray, which led to the finding by the witness and appellant's brother of a book which was hidden under a rock near the place where the body was found, which book was the property of the deceased.

Complaint is made of the refusal of the court to instruct the jury that the venue was not proved, and for that reason to return a verdict of not guilty. The bill of exceptions taken to the refusal of the court to give a peremptory instruction contains only this language:

"That the state's evidence showed that the defendant and the deceased left the town of Carbon about sundown on the evening of August 10, 1922, going in the direction of Gorman, Tex., which was about 10 or 12 miles east of Carbon and in the direction of the county line of Eastland and Comanche counties, and were not seen any more in said Eastland county, and that the dead body of the deceased was found in Coryell county, Tex., about 123 miles from Eastland, Tex., on or about the 2d day of March, A. D. 1923, and defendant prays the court to approve this bill of exceptions, and that it be made a part of the record in this cause, which is accordingly done."

In article 938, C. C. P., it is stated:

" *  *  * In all cases, the court shall presume that the venue was proven in the court below,  *  *  * unless such matters were made an issue in the court below, and it affirmatively appears to the contrary by a bill of exceptions."

In construing this statute, this court, in McGlasson's Case, 38 Tex. Cr. R. 360, 43 S. W. 94, used this language:

"It occurs to us that this statute requires this court to indulge the presumption that the venue was proved in the court below, unless the bill of exceptions shows affirmatively that it was not proved. This would seem to apprehend that, before we can treat the venue as not proved, the court must either certify that the evidence did not establish the venue, or that said bill of exceptions should contain all the testimony in the case tending to show venue, and certify that same was all the testimony bearing upon that issue; and from this statement of the testimony it affirmatively appears that the venue in the case was not proved. If this be a true construction of said article, then the bill in question does not comply with the requirements of the law."

[1] This construction of the statute has been consistently applied. See Allen v. State, 82 Tex. Cr. R. 416, 199 S. W. 633, and cases therein cited. Tested by this rule, it seems that the bill of exceptions is incomplete in that it fails to contain any certificate of the trial judge to the effect that all the testimony bearing upon the issue of venue was contained in the bill. From the statement set out in the bill, it does not affirmatively appear that the venue was not proved. We have examined the statement of facts containing about 350 pages and embracing the testimony of nearly 100 witnesses, with the view of ascertaining whether, in fact, the record would affirmatively show that the homicide was not proved to have taken place in Eastland county. The record, from the state's testimony, makes it clear that the deceased was last seen alive in company with the appellant at Carbon, in Eastland county, and that at that time the appellant and deceased were riding together in the car belonging to the deceased, and were on their

way to De Leon in Comanche county, a distance of some 25 or 30 miles from Carbon. No witness, either for the state or the appellant, saw the deceased after he was seen in Carbon, and the appellant's theory that he and the deceased continued in company with each other until they reached Levita in Coryell county is controverted by the testimony of the appellant's brother. In our opinion, the evidence fails to show that the homicide did not take place in Eastland county; on the contrary, the evidence is such as would warrant the jury in finding that the deceased met his death in Eastland county. The court was not in error in refusing to instruct the jury that venue was not proved. The question of venue, under the evidence, was one of fact which might with propriety be determined by the jury under proper instruction.

[2] A first application for a continuance was made on account of the absence of several witnesses therein named. The action of the court in overruling the motion was made the subject of exception, and is properly brought forward for review. From the bill it is made to appear that a subpœna was issued for Mr. and Mrs. Luther Tucker, who were residents of Bell county. These witnesses, according to the motion which is not controverted upon that point, would have testified that about one week before the homicide, the appellant had in his possession a roll of money containing $600 or $700. The trial was set for the 29th day of October. Subpœna was served on the 21st of that month. At the time the case was called for trial, and the motion for a continuance was presented, the sheriff's return upon the subpœna had not been made, and did not reach the court until after the evidence was closed.

Contesting the application, the prosecuting officer stated in writing, under oath, that he had been informed that the witnesses mentioned, namely Mr. and Mrs. Luther Tucker, "are now upon the road to this court from Bell county, and will be in attendance on the trial in this case before the evidence is begun." It further appears from the bill that the witnesses did not appear, and during the progress of the trial, counsel for the appellant, at divers times, insisted upon the presence of these witnesses and requested the issuance of additional process for their attendance.

As original testimony, the state introduced evidence to the effect that the deceased was last seen alive in company with the appellant; that the appellant was in possession of the automobile of the deceased; that he made use of it to flee the country. These adverse circumstances the appellant undertook to explain by his testimony and by that of his wife, both of whom were intensely interested witnesses, and both of whom testified to the possession by the appellant of a sum of money shortly before the homicide. In the cross-examination of both the appellant and his wife, many facts were developed which were available to the jury to discredit the truth of the appellant's testimony and the verity of his defensive theory. The case being one depending wholly upon circumstantial evidence, the law invited the development of every circumstance reasonably calculated to illumine the transaction and favored the exploration of every avenue that might possibly lead to the truth. See Noftsinger v. State, 7 Tex. App. 322; Washington v. State, 8 Tex. App. 377; and other cases collated in Branch's Ann. Tex. P. C. § 1872.

[3] The right of each party to introduce relevant testimony to contradict, explain, or minimize the force or effect of adverse testimony is fundamental, and has often been so declared by the decisions of this court. See Arnold v. State, 9 Tex. App. 435, and other cases listed by Mr. Branch in his Ann. Tex. P. C. § 97, subd. 9.

[4] The relevancy of the fact that the appellant possessed a sum of money equal to that which he claimed to have paid the deceased for his automobile could not, under the record, become a subject of controversy. This was recognized by the trial court in receiving the appellant's testimony to that fact.

The absence of the two witnesses who would have corroborated the appellant's testimony was due to no fault of his. He used diligence which resulted in the service of subpœna upon them in ample time to secure their attendance; he pressed his demand for their attendance throughout the trial. That they would have given the testimony is not controverted. It cannot be said that their testimony would not have shed light upon the issue which involved the life of the appellant. Applying the principles to which reference has been made and the precedents cited above, the receipt of similar testimony was sanctioned upon behalf of the state in the case of Lovel v. State, 93 Tex. Cr. R. 621, 248 S. W. 349.

It is believed that the learned trial court was not warranted in refusing to grant the appellant's first application for a continuance, and that in the light of the evidence the error should have been corrected by the granting of a new trial.

[5] The bill of exceptions to the action of the court in refusing to continue the case, filed within the extension allowed by the court, cannot be disregarded because it was filed after the term ended. Nothing in Reese v. State, 94 Tex. Cr. R. 220, 249 S. W. 857, or the authorities cited therein authorizes such action.

[6] After the appellant was arrested, and while he was in jail, he, according to one of the state's witnesses, told the witness to go to a certain place near Clyde Mohler's house and search a thicket near where the body of the deceased was found, and to turn up the rocks until he found something, and then

turn it into the state and tell them that Clyde Mohler told him where it was. Pursuant to this information a search was made and a certain memorandum book (which according to other evidence was identified as the property of the deceased), was found hidden under a rock in the vicinity of the place where the body was found. The receipt of this testimony was not obnoxious to the statute protecting one accused of crime against the use against him of a verbal confession made while under arrest and unwarned, for the reason that the finding of the book pursuant to the information brought the contention within the terms of the exceptions embraced in the statute mentioned, which sanctions the receipt in evidence of statements of circumstances found to be true, and which conduce to establish the guilt of the accused. See article 810, C. C. P.; also Patterson v: State, 89 Tex. Cr. R. 402, 231 S. W. 764; Williams v. State, 88 Tex. Cr. R. 87, 225 S. W. 177; Hilliard v. State, 87 Tex. Cr. R. 416, 222 S. W. 553.

[7] The purported statement of the appellant, coming from the same witness that he had asked the witness to make some frame-up to contradict the story given by the appellant's brother, Clyde Mohler, in order to prevent the appellant from going to the gallows, seems to have been obnoxious to the statutory rule excluding the unwarned verbal declaration of the accused while under arrest to be used by the state to establish his guilt. Article 810, C. C. P.; Branch's Ann. Tex. P. C. § 60. In our judgment, the court's limitation of this testimony for impeaching purposes did not, under the present record, cure the error in receiving it. Morales v. State, 36 Tex. Cr. R. 234, 36 S. W. 435, 846; Branch's Ann. Tex. P. C. § 74.

[8] Exceptions to the action of the trial court in the introduction of evidence presented by proper bill of exceptions must be reviewed on appeal, though no mention is made of it in the motion for new trial. See Sessions v. State, 81 Tex. Cr. R. 424, 197 S. W. 718; Bargas v. State, 86 Tex. Cr. R. 217, 216 S. W. 172; Taylor v. State, 89 Tex. Cr. R. 112, 229 S. W. 552; Vaughn v. State, 84 Tex. Cr. R. 483, 208 S. W. 527; Bargas v. State, 86 Tex. Cr. R. 217, 216 S. W. 173; Manley v. State, 92 Tex. Cr. R. 537, 244 S. W. 533.

[9, 10] It is believed that the court committed no error in receiving in evidence the fact that the piece of wire which was found at the place where the remains of the deceased were found, on the ground that it was part of the res gestæ of the discovery. Nor did the court err in receiving the testimony tending to show that there were peculiarities about this wire which coincided with peculiarities in a wire gotten from a gap at a creek between Carbon and Gorman in Eastland county, and that these peculiarities were uncommon. Objections to this testimony go to its weight. It was a matter coming under the rules governing circumstantial evidence, which favors the exploring of all avenues which lead to the truth, which the state was entitled to have submitted to the jury for what it was worth, as indicating that the homicide had taken place in Eastland county, and that the wire had been brought to the place where the remains were found by the appellant.

[11] Nor did the court err in receiving the testimony touching the railroad time-table showing the schedule of trains running between Cisco and De Leon. This testimony tended to combat the appellant's theory and to show that in selecting the service car run by the deceased, the appellant adopted the more expensive and more inconvenient means of travel.

[12] The fact that the appellant's son was arrested at the same time as the appellant may have been pertinent. Any mistreatment of the son by the officers while in confinement was properly excluded.

[13] The wife of the appellant was called by him as a witness to identify a letter which was introduced in evidence, which she testified that the appellant had written to her, and which purported to have come from Tuscola, Tex. The cross-examination conducted by the state, touching the knowledge of the recipient of the letter, did not, in our opinion, infringe on the statute inhibiting the use of the wife against her husband. The law permits a germane cross-examination, and, so far as we are able to discern, that conducted was within the scope of the rules of evidence as construed by this court. Article 795, C. C. P.; Vernon's Tex. Cr. Stat. 1916, vol. 2, p. 727, note 2; Bell v. State, 88 Tex. Cr. R. 64, 224 S. W. 1108.

Because of the errors pointed out, the judgment is reversed, and the cause remanded.