### F. M. SNOW V. THE STATE.

No. 10371.    Delivered February 9, 1927.

Rehearing denied March 9, 1927.

#### Certiorari to Correct Record.

Counsel for the state having applied for a certiorari to correct the record in this court, so far as it relates to appellant's bill of exception No. 13, the application is granted and the clerk of the lower court is directed to forward to the clerk of this court all matters pertaining to

the appellant's said bill of exception No. 13, including the evidence heard thereon, and any orders of the court made with reference thereto. See East Line & Red River Ry. Co. v. Culberson, 10 S. W. 706, and other cases cited.

### 1.—Murder—Continuance—To Test Defendant's Sanity—Properly Refused.

Where, on a trial for murder, before announcing ready, counsel for appellant sought by motion to postpone the trial and transfer the appellant to the jail at Fort Worth, in order that an examination by experts on mental diseases might be made. The court overruled the motion, with the explanation that he would exert the power of the court to secure the attendance of experts upon the trial. This was done, and no injury appears by reason of the refusal of the postponement.

### 2.—Same—Evidence—Repetition of Testimony of Witness—Properly Suppressed.

It is proper practice to prevent a witness from repeating irrelevant testimony, and in the enforcement of this rule it is proper for the trial court to admonish the witness to refrain from disobeying the orders of the court.

### 3.—Same—Confession of Accused—Its Voluntary Character—Question for the Jury.

Where, on a trial for murder, appellant complains of the introduction of his first written confession, on the ground that same was not voluntarily made. The issue of its voluntary character having been appropriately submitted in the court's charge for the determination of the jury, no error is shown.

### 4.—Same—Continued.

Where appellant complains of the introduction of a second confession in writing, on the ground that it was not voluntary, and it appears that prior to making such second written confession he had made a verbal confession, and with the officers had pointed out the decapitated body of deceased where it had been concealed by him. Such second written confession was rendered admissible by the phase of the statute which declares a verbal confession admissible when it leads to the discovery of facts which conduce to establish guilt. See Art. 727, C. C. P. 1925.

### 5.—Same—Continued.

While it is true that appellant's verbal confession may have been made under the influence of fear, and persuasion by the officers, the law is that if the accused, under arrest, makes a confession through persuasion or fear, he may not successfully oppose its receipt in evidence, where in connection therewith he makes statement of facts and circumstances that are found to be true, and conduce to establish his guilt. Following Jackson v. State, 29 Tex. Crim. App. 458, and numerous other cases cited.

### 6.—Same—Confession of Accused—Of Other Offenses—When Admissible.

Appellant complains of the introduction of that part of his written and verbal confessions on which he related the killing by himself of his wife, the mother of deceased, and of her mother. Where a confession becomes admissible by reason of its resulting in the discovery of the body of deceased, the entire confession is available to the state. The confessions

in this case were also relevant upon the issue of motive for the killing of the deceased. See McClure v. State, 100 Tex. Crim. Rep. 545, and other cases cited.

**7.—Same—Examination of Alienists—Presence of Counsel—Not Improper.**

Where alienists, who had been summoned to testify as to appellant's sanity, were permitted to make an examination of him, touching his sanity, there was no error in the trial court permitting counsel for the state, and the county health officer to be present at such examination, after having instructed them that they could take no part in it.

**8.—Same—Evidence—Properly Admitted.**

Where certain bones and teeth were found in the residence of appellant in the ashes where he had confessed that he burned the bodies of his wife and her mother, there was no error in permitting physicians to testify that the bones and teeth so found were parts of a human being.

**9.—Same—Change of Venue—Properly Refused.**

Where a motion for a change of venue is presented, and the means of knowledge of the compurgators are contrived in the manner prescribed by statute, and no evidence was offered by the appellant in support of his averments, no error is observed in the overruling of such motion.

**10.—Same—Insanity—Is a Question of Facts.**

Where the issue of insanity is raised by the appellant, and the evidence thereon is conflicting, this presents an issue of fact to be passed upon by the jury, under appropriate instructions by the court, and their determination of the matter is binding upon the court.

**11.—Same—Charge of Court—Defining Malice Aforethought—Held Correct.**

Where the term "malice aforethought" as defined in the court's charge is in accord with the charges that have been frequently approved by this court, such charge will be approved. See Harris v. State, 8 Tex. Crim. App. 109, and other cases collated in Branch's Crim. Law, Sec. 421.

**12.—Same—Instructed Verdict—Properly Refused.**

Where there was no issue as to the admissibility of the verbal confession of the accused, in which the slaying of the deceased was admitted, there was no error in the court's refusal to instruct the jury that in the event the confessions were not voluntary to acquit the appellant.

**13.—Same—Requested Charge—On Circumstantial Evidence—Properly Refused.**

Where appellant had confessed to the killing of deceased, had pointed out his decapitated body and told where the head could be and was found, there was no error in refusing his requested charge on the law of circumstantial evidence.

**14.—Same—Charge of Court—On Insanity—Held Correct.**

Where the court's charge on insanity in form is not unlike that in Newman's case, 269 S. W. 440, and other cases therein cited, and is not

substantially variant from that in Willson's Tex. Crim. Forms, 4th Ed., No. 930, and which has often been approved, it will be held sufficient. The burden was upon the appellant to support his defense of insanity by a preponderance of the evidence, and the court did not err in so instructing the jury. See Hartman v. State, 213 S. W. 936, and other cases cited.

**15.—Same—Charge of Court—On Confession and Insanity—Held Correct.**

Where the court in his charge submitted to the jury the requisites of a voluntary confession, and instructed them that the confessions were to be disregarded if the appellant was insane, or wanting in mental capacity of such degree that he did not kow the nature and consequences of his act, or if they had a reasonable doubt upon that subject, to disregard the confessions, such charge was a correct presentation of the law.

ON REHEARING.

**16.—Same—Correcting Record—No Error Shown.**

Where it was discovered by the trial judge that his approval of one of appellant's bills of exception had been fraudulently obtained, and after notice to appellant, and opportunity for a hearing given both sides, at which hearing appellant did not appear, the bill was corrected to speak the facts, no error appears in such action.

**17.—Same—Charge of Court—No Error Shown.**

Where Appellant complains that the court allowed evidence of the fact that appellant was of a low order of mentality, but declined to instruct the jury that they could consider this testimony in determining the penalty, no error is shown. It is not proper practice for the trial court to select parts of the testimony, and tell the jury that same was offered for this purpose, or that, as such a charge would most likely be on the weight of the evidence.

**18.—Same—Evidence—Limiting Same—When Not Necessary.**

Where evidence had been admitted of the killing of appellant's wife, the mother of deceased, and her mother by the appellant, prior to the killing of deceased, and on the same day, such testimony being admitted to establish motive, it was not necessary that the charge of the court should limit the purpose of such testimony. Following Terry v. State, 45 Tex. Crim. Rep. 272, and Pannell v. State, 54 Tex. Crim. Rep. 504.

Appeal from the District Court of Erath County. Tried below before the Hon. J. B. Keith, Judge.

Appeal from a conviction of murder, penalty assessed at death.

The opinion states the case.

*M. L. Munday* of Stephenville, and *Wallace Scott* of Fort Worth, for appellant.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

ON MOTION FOR CERTIORARI.

MORROW, PRESIDING JUDGE.—State's counsel has presented to this court a motion for certiorari, and for the privilege of correcting the record in this court so far as it relates to the appellant's bill of exceptions No. 13.

It appearing that counsel for the appellant has been duly notified, it is ordered that the state's motion be granted and that the clerk of the District Court of Erath County be directed to prepare a supplemental transcript bringing forward all matters pertaining to the appellant's said bill of exceptions No. 13, including the evidence heard thereon and any orders of the court made with reference thereto.

In the motion before this court there are embraced averments to the effect that the signature of the trial judge to the original bill of exceptions No. 13 was fraudulently obtained and that upon the hearing in the trial court the correction in the bill was ordered. In support of the procedure sought, counsel for the state refers to the following cases: East Line & Red River Ry. Co. v. Culberson, 10 S. W. 706; Johnston et ux. v. Arrendale, 71 S. W. 44; Neville v. Miller, 171 S. W. 1109; Stark v. Harris, 106 S. W. 887; Howard v. State, 178 S. W. 506; Sullenger v. State, 79 Tex. Crim. Rep. 98.

The order here made directing the clerk to forward the supplemental record does not imply that this court has determined that the alleged correction was made under authority, but the purpose of the order is simply to bring before this court all the proceedings had in the trial court pertinent to the appeal.

*Certiorari ordered.* ·

MORROW, PRESIDING JUDGE.—The offense is murder, punishment fixed at death.

The name of the deceased was Bernie Connally, who was a young man, stepson of the appellant. About October 6, 1925, the appellant and Mrs. Maggie Poston, mother of the deceased, were married. They, together with Mrs. Olds, the grandmother of the deceased, resided at the home of the appellant.

It is the theory of the state, supported by the confession of the appellant and by circumstances, that on the 27th day of November, the appellant killed his wife and her mother in his home and afterwards, on the same day, killed Bernie Connally, the deceased.

In bill No. 7 it appears that before announcing ready for trial, counsel for the appellant, who had previously been appointed by

the court to represent the appellant, sought, by motion, to post-pone the trial and transfer the appellant to the jail in Fort Worth in order that an examination by experts on mental diseases might be made. The court overruled the motion with the explanation that he stated he would exert the power of the court to secure the attendance of experts upon the trial; that pursuant to said offer he did cause process to be issued to secure the attendance of three persons from Fort Worth who testified as expert witnesses and alienists in behalf of the appellant upon the issue mentioned.

Bill No. 8 relates to the action of the court in preventing a witness from repeating irrelevant testimony by admonishing her that she must refrain from disobeying the orders of the court. We find nothing in the bill that appears to transgress the proprieties.

Bill No. 9 reflects the complaint of the action of the court with reference to two written confessions which were introduced in evidence by the state. After the confessions had been introduced and the witnesses concerning them had been cross-examined, appellant, through his counsel, made a motion to have the court withdraw the testimony embraced in them, which was overruled, and it is of this that complaint is made. The motion to withdraw is upon the ground that the confessions were not voluntary but were induced by promises and by fear of mob violence. According to the bill as qualified, soon after the making of the *first* confession mentioned, appellant, in company with several officers, went from the city of Fort Worth to a point near Bluffdale, in Erath County, where, upon a mountain the decapitated body of the deceased, Bernie Connally, was pointed out by the appellant. The same facts in substance were, on the next day, again related to the officers by the appellant at Fort Worth and were then reduced to writing and signed by the appellant. As to the first confession, any evidence touching improper influences was so conflicting as to present an issue of fact; and the facts set out in the *second* confession were rendered admissible by the phase of the statute on confessions which declares a verbal confession admissible when the accused, in connection therewith, makes statements of facts and circumstances that are found to be true and which conduce to establish his guilt. See Art. 727, C. C. P., 1925.

In the first confession embraced in the bill, appellant stated in substance that he was forty-six years of age; that some five months before Mrs. Maggie Poston, her son, Bernie Connally, and her mother, Mrs. Olds, came into the neighborhood and that

he later married Mrs. Maggie Poston; that on November 27 he took them to the town of Iredell and left them at the depot, being told by his wife that they were going to Waco to sell some property which belonged to her son; that he had not seen his wife or her mother since but had received letters from his wife. This took place on Friday. On Monday following, Bernie Connally returned and that evening was killed by the appellant and his body hauled to a point in Erath County about two miles from Cedar Point; that the head of the deceased was chopped off with an axe; that he left the head of the deceased in an old cellar on the Riggs place, wrapped in the coat of the deceased and placed in a towsack. Some two or three days before the arrest of the appellant there had been accidentally discovered in an old cellar on the Riggs place a human head, the flesh upon which was in a state of decay. The head was in a sack and with it there was a coat. This head was afterwards identified as that of the deceased.

The officers were not satisfied with the confession and after talking to the appellant, he agreed to tell the truth and accompany the officers to Erath County and to a mountain near the Cedar Point schoolhouse, where the decapitated body of the deceased was found, through the directions and statements of the appellant.

Some of the state's witnesses testified that the appellant, before making the verbal statement, said that he would tell the truth if they would see that his neck was not broken; that they assured him that they would protect him against any mob violence. He was also told by the Sheriff of Erath County that if he would not tell the location of the body of the deceased he would be taken to jail at Stephenville, and something in that connection was said about a mob. The inference to be drawn from the evidence before the court is that the appellant was apprehensive that he might be injured by a mob in Erath County; that he did not want to be taken to Erath County unless he was assured protection against mob violence, and that this assurance was given him. As we understand the law, the accused under arrest, who makes a confession through persuasion or fear, may not successfully oppose its receipt in evidence where, in connection therewith he makes statements of facts and circumstances that are found to be true and conduce to establish his guilt. Such are the terms of the statute. See Jackson v. State, 29 Tex. Crim. App. 458; Jones v. State, 50 Tex. Crim. Rep. 329; Ortiz v. State, 68 Tex. Crim. Rep. 524; Martinez v. State, 75 Tex. Crim. Rep. 416; Freeman v. State, 80 Tex. Crim.

Rep. 20; Elliott v. State, 83 Tex. Crim. Rep. 366; Torrence v. State, 85 Tex. Crim. Rep. 310; Washington v. State, 86 Tex. Crim. Rep. 327, and other cases collated in Vernon's Tex. C. C. P., Vol. 2, p. 827, note 12.

In the second confession, that is, the one made in connection with the finding of the body of the deceased and afterwards reduced to writing and signed by him under the formalities required by Art. 727, supra, the appellant said in substance that after killing the deceased he pulled off his trousers and shoes and kept them; that he then took the body to a point about eight or nine miles and left it; that he cut off the head with an axe, wrapped it in the coat of the deceased, placed it in a sack and carried it to the place where it was afterwards found; that the next night, about 9 o'clock, he destroyed, by fire, the bodies of his wife and mother-in-law by placing them in the fireplace of his dwelling; that he used about a quarter of a cord of wood in destroying them and that it required until about 4 o'clock in the morning; that after burning the bodies he carried the ashes and deposited them in an ash pile, which he designated. He also gave other details. The statement also contained declarations that there had been no coercion or undue persuasion used in inducing the confession.

The court submitted to the jury as a question of fact the voluntary nature of the confessions and instructed that they be disregarded unless they were voluntarily made. This is the familiar practice. See Bingham v. State, 97 Tex. Crim. Rep. 594; Ruiz v. State, 92 Tex. Crim. Rep. 73; Richardson v. State, 92 Tex. Crim. Rep. 526; Vernon's Ann. Tex. C. C. P., 1925, Vol. 2, p. 832, note 15.

In bill No. 12 there is recorded the complaint of the appellant to the introduction of that part of his confession wherein he related the killing of his wife and her mother and the means used in destroying the bodies. Against the receipt of this testimony objections were urged that it was irrelevant and that it, without legal reason, disclosed the commission of another offense. As we understand the record, this statement was embraced in the oral confession made in connection with the finding of the body of Bernie Connally, and was also embraced in the written confession later made by the appellant embodying the same matters as were embraced in the oral confession. If this is the proper understanding of the record, it is possible that the state would have had the right to introduce in evidence the oral confession that was made by the appellant which resulted in the finding of the bodies. See Torrence v. State, 85 Tex. Crim. Rep. 311. We

understand that where the confession becomes admissible by reason of its resulting in the discovery of the body of the deceased, the entire confession is available to the state. McClure v. State, 100 Tex. Crim. Rep. 545. However, that may be, the position taken by state's counsel is that the evidence adduced upon the trial leads to the conclusion that the motive which impelled the killing of the deceased, Bernie Connally, was in part, at least, to prevent Connally's discovery of the bodies and his giving evidence that the appellant had killed his wife and mother-in-law. The accepted bill of exceptions, as well as the statement of facts, reveal many circumstances tending to support this theory.

According to the state's evidence, on the morning of the day on which the homicide took place, the deceased, Bernie Connally, took a wagonload of wood to Stephenville; that on the afternoon of that day the appellant, on horseback, and carrying a Winchester rifle, met the witness Hill and inquired whether the witness had seen Connally, and in the same connection appellant stated that he had made a mistake in marrying his wife, and among other things said that she had shot at him three times. Later on the same day, the witness Hill saw the appellant and Connally in the wagon together going in the direction of the appellant's home. Connally was driving and the appellant was sitting in the back of the wagon, holding his gun in one hand and leading his horse with the other.

In the conversation first mentioned, appellant told the witness that his wife and mother-in-law had gone to Waco. They, by the way, had disappeared and had never been seen alive since the occasion mentioned. After the homicide, appellant sold various articles of household furniture, which belonged to his wife, to Mrs. Hill, mother of the witness mentioned.

Many remarks, contradictory in their nature, are imputed to the appellant touching the whereabouts of his wife, her son and her mother. He claimed on various occasions, after the death of the deceased, Connally, to have received letters from him.

In the home of the appellant were found human bones and teeth and other evidence corroborative of his statement in his confession to the effect that he had killed his wife and mother-in-law and supporting the theory that at the time that the appellant had the conversation with Hill, the bodies of the appellant's wife and mother-in-law were at his house and undisposed of; that Bernie Connally, son of the appellant's wife, was known by the appellant to have gone to town; that he was intercepted by the appellant and joined by him; that the appellant was armed

with a Winchester; that Bernie Connally was never seen alive thereafter; that he was shot in the back. All of these matters come from testimony aside from the confessions. There were blood stains upon the wagon in which deceased was riding at the time he was seen by Hill.

Touching the corroboration of the confession in which he claims to have killed the deceased, Bernie Connally, in addition to the finding of the body and the head, there was evidence of blood stains upon the wagon in which his body was hauled (the same in which Hill had seen appellant and deceased), and upon the axe with which his head was severed, the finding of his apparel in the condition described by the appellant, all refuting the appellant's statement to the effect that the deceased had gone to Waco.

Upon the record, we are of the opinion that the facts adduced touching the killing by the appellant of his wife and mother-in-law and the disposition of their bodies were not improperly received but that they were relevant upon the issue of motive for killing the deceased, Connally. See Underhill's Crim. Ev., 3rd Ed., Sec. 503, note 84.

In bill No. 10, appellant complains of the action of the court with reference to the request that was made by the appellant concerning his examination by alienists. As explained by the trial judge, the court was informed by appellant's counsel that certain mental experts subpoenaed as witnesses had arrived; that an opportunity for the examination of the appellant touching his mental condition was desired, and that counsel for the defendant desired to be present at the examination. State's counsel asked the same privilege. The physicians and alienists were under process and had not indicated to the court that they desired to have any private examination of the accused. Under the circumstances mentioned, the court instructed the District Attorney and the County Health Officer that they might be present at the examination, but that they could take no part in it, and they, in fact, took no part in it. We fail to perceive in the action of the trial judge any abuse of his discretion, or transgression of any right of the appellant. There is no suggestion of injury. The witnesses in question gave testimony favorable to the appellant on the issue of insanity.

In bill No. 11 complaint is made of the receipt of evidence of the testimony of physicians to the fact that they had examined the bones and teeth found in the residence of the appellant and in the ashes described by him, and identified them as parts of human beings. Their testimony was quite specific upon that

subject. The evidence made it clear that they were taken from the place at which appellant, in his confession, declared he had put them. The articles themselves were not exhibited to the jury, but were examined by experts who, as stated above, identified them as parts of human bodies. The killing of his wife and mother-in-law by the appellant being relevant on the issue of motive in killing Connally, the testimony in question in the bill of exceptions was admissible in support of the state's theory that appellant did kill his wife and mother-in-law and had destroyed their bodies.

In bill No. 13, as corrected by the court, there is a complaint of the overruling of the motion for a change of venue. The means of knowledge of the compurgators are controverted in the manner prescribed by statute, and no evidence was offered by the appellant to support his averments.

Appellant introduced non-expert witnesses on the issue of insanity. He also introduced some expert testimony upon the same subject. The expert witnesses classified the appellant's mind as that of a *moron,* a person of low mind. According to some of them, he had never had a normal mind. The state intro-. duced some non-expert witnesses who gave opinions favorable to the state's theory that the appellant's mind was sound; that he knew right from wrong with reference to the matter in hand. There was also some expert testimony upon the same subject. The most that can be said upon the subject is that the evidence touching the insanity developed a question of fact resting upon conflicting evidence, the solution of which would be binding upon the court when determined by the jury under proper instructions.

The term "malice aforethought" as defined in the sixth paragraph of the court's charge and against which exception was addressed, is in accord with the charges that have been frequently approved. See Harris v. State, 8 Tex. Crim. App. 109, and other cases collated in Branch's Crim. Law, Sec. 421.

In bill No. 2 criticism is made of the charge because it failed to instruct the jury that in the event the confessions of the appellant were not voluntary, there should be an acquittal for the reason that in the absence of the confessions the evidence was inadequate to support the conviction. Touching the first written confession as made, we have failed to discern any cogent evidence against its voluntary nature. In it the slaying by the appellant, without justification, was admitted. In the verbal confession the slaying, under conditions amounting to murder, was affirmed and its voluntary character was not in question for the reason that it was admissible under the phase of the statute

which sanctions a confession though it be induced by promises or impelled by threats when it is accompanied by statements of facts and circumstances such as those accompanying the confession of the appellant.

Touching the voluntary character of any part of the confessions, the most that can be said on the issue is that the evidence was conflicting and their nature in that regard was submitted to the jury in a charge in which we perceive no fault of substance. The evidence is not circumstantial. The appellant's confessions are specific, and the court was not in error in refusing to charge that the state relied for a conviction upon circumstances alone.

The sufficiency of the charge on insanity embraced in paragraphs 10 and 11 of the charge, without quoting it, we are constrained to conclude that it was not amenable to any just criticism. In form, it was not unlike that in Newman's case, 269 S. W. 440, and other cases therein cited. It is not substantially variant from that in Willson's Tex. Crim. Forms, 4th Ed., No. 930, which has often been approved. The burden was upon the appellant to support his defense of insanity by a preponderance of the evidence. The court did not err in so instructing the jury. See Hartman v. State, 213 S. W. 936; Roberts v. State, 231 S. W. 759. The court was not in error in refusing to instruct the jury that it was incumbent upon the state to prove the sanity of the appellant beyond a reasonable doubt. See Sagu v. State, 248 S. W. 390.

That paragraph of the charge instructing the jury upon the requisites of a voluntary confession and submitting to them the determination of the question of the voluntary nature of the appellant's confessions, we think is not subject to any just criticism. Moreover, it is supplemented by paragraphs 12 and 13. In paragraph 12 the jury was instructed that the confessions were to be disregarded if the appellant was insane or wanting in mental capacity of such degree that he did not know the nature and consequence of his act in so doing, and if they had a reasonable doubt upon that subject, they should disregard the confessions.

Failing to perceive any fault in the trial or weakness in the proof which would justify a reversal of the judgment, its affirmance is ordered.

*Affirmed.*

## ON MOTION FOR REHEARING.

LATTIMORE, Judge.—Much of appellant's motion is devoted to a discussion of what he claims to have been an erroneous ruling in regard to his bill of exceptions No. 13.   It appears that upon notice to appellant and an opportunity for a hearing given both sides, the learned trial court concluded that his approval of said bill had been fraudulently obtained, and the bill was corrected to speak the facts.   Appellant's counsel does not seem to have been present at such hearing and there was no opposition to the court's correction of said bill.   We perceive no error in this matter.   We do not think the authorities cited by appellant support his contention.   If appellant had any ground for contesting the state's effort to correct the record, the time for him to have presented his contest was when he was notified and given opportunity to appear before the trial court.   To attempt to combat the conclusion reached by the court below, by statements in the brief or in the motion for rehearing in this court, is too late.

The court allowed evidence of the fact that appellant was of a low order of mentality, but declined to instruct the jury regarding same.   Complaint is here made of the court's failure to charge the jury that they could consider this testimony in determining the penalty.   In the absence thereof, if the trial court had undertaken to select parts of the testimony and tell the jury that same was offered for this purpose or that, it would most likely have been deemed on the weight of the evidence.

Appellant's bill of exceptions No. 6 wholly fails to bring before us any facts purporting to appear in what is referred to as appellant's first confession; and presents no support for the claim now made that the trial court erred in not charging the jury relative to said first confession.   We are unable to find that appellant excepted to the charge of the court for any failure in this regard.

We are of opinion that proof of the killing of appellant's wife and her mother, prior to the killing forming the basis of this prosecution, and on the same day, was admissible as part of the state's case in chief, as establishing motive.   In such case it is not necessary that the charge of the court limit the purpose of the admission of such testimony.   Terry v. State, 45 Tex. Crim. Rep. 272.   Pannell v. State, 54 Tex. Crim. Rep. 504.

We have considered each ground of the motion and find ourselves unable to agree with any of same.   The motion for rehearing is overruled.                                        *Overruled.*