## Umberto Reminez Valtiero v. State.

No. 24234. February 23, 1949.
Rehearing Denied April 20, 1949.

*Roger Lewis* and *A. S. Baskett,* Dallas, for appellant.

*Will R. Wilson, Jr.,* Criminal District Attorney, *George P. Blackburn,* First Assistant District Attorney, *Thomas C. Unis* and *Douglas E. Bergman,* Assistants District Attorney, Dallas, and *Ernest S. Goens,* State's Attorney, Austin, for the state.

HAWKINS, Presiding Judge.

It was charged against appellant that with malice aforethought he killed Thomas Gentry Taylor by beating and striking him with an "automobile oil pan." Upon conviction punishment was assessed at death.

On the night of September 30, 1947, at about 10:00 p. m. deceased was in a beer tavern in the city of Dallas. He bought a bottle of beer for which he paid with a one-dollar bill, getting back eighty cents in change. He was seen to have only three dollar bills at that time. Later in the night he went into another beer tavern, The Bank D'Ora Cafe, and sought to buy more beer but was refused because he was thought to be intoxicated. Appellant and a companion were in the beer tavern at this time. Immediately after deceased left the tavern appellant and his companion left. At this time deceased was known to have been wearing a brown hat, and two shirts; a white one, and on top of it a red plaid shirt. A short time later in the night deceased's body was found in an alley near the beer tavern. His hat was gone and likewise the red plaid shirt. As described by non-expert witnesses, his head had been beaten into a "pulp". Near the body was an "automobile oil pan"—called by some wit-

nesses a "crankcase"—with blood and hair on it. A witness testified that after appellant and his companion left the beer tavern following deceased appellant came back later and left with witness a package wrapped in newspaper, asking her to keep it for him; that through curiosity she looked to see what was in the package, and found it to be a red plaid shirt. Appellant again came back to the tavern, got the package and took it away with him. Appellant was arrested two or three days later. At this time neither deceased's hat nor the red plaid shirt had been found, and the officers had no information as to their whereabouts. In a conversation with Captain Will Fritz, who was in charge of the homicide and robbery detail of the Dallas Police Department, appellant told Captain Fritz and officer E. R. Beck where the hat had been thrown in high weeds, and went and pointed out its location. It was found as a result of appellant's disclosure, and identified as deceased's hat. In connection with the information from appellant which lead to the recovery of the hat he told Captain Fritz that he (appellant) and his companion killed deceased by striking him numbers of times with the automobile oil pan, and said both of them struck deceased several times, and that they took his hat, shirt and about two dollars in money. Appellant also told the officers, or attempted to tell them where the red plaid shirt was. They were not able to recover the shirt, but from what appellant told them they did find where the shirt had been, but it was then gone. The state introduced a written confession of appellant taken under the formalities required by the statute after the proper warning, which confession is as follows, omitting the formal parts.

"* * * My name is Umberto Remierz Valtierra. My address is 2704 North Pearl. I am 21 years old. On the night of September 30th, 1947, at about 10:00 o'clock P. M. I was in a beer joint at Alamo & Wichita Streets. I was sitting in the booth drinking a bottle of beer, Martin Salazar was already in the beer joint when I went in there. He was sitting at the bar drinking a bottle of beer. He saw me and came over to the booth where I was and sit down beside me. About 10:15 o'clock P. M. This same night, an old man that I knew was named Taylor, came into the beer joint while I was sitting there, with Martin Salazar. The old man came over to the booth and was arguing with Martin Salazar and he walked on away in a few minutes and got a bottle of beer at the bar. After he walked away to get the beer Martin Salazar turned to me and said 'Let's rob the old man after he gets out of the place.' The old man was drunk. Taylor drank his beer and went out of the place at about 10:30 o'clock P. M. We both got up and followed him out of

the beer joint and down Alamo Street about a block and I took the old man by the hand and led him up the alley. Martin Salazar *was us,* walking on the other side of the old man. Martin Salazar grabbed a hold of the old man and I picked up an old crank case and started beating him over the head with it while Martin Salazar held so he couldn't fight back as I hit him * * * I beat him in the head and Martin Salazar released him and he fell to the ground and I kept beating him on the head until I was sure he was dead. Martin Salazar searched Taylor's pocket and found a dollar and took it. I took his hat and threw it in the bushes a short distance away from where he was beaten to death. Martin Salazar told me he wanted the old man's shirt, which was a red checked shirt and he took it off of him. I took the old man's tie off of him and threw it up on the fence. We left and went up on Cedar Springs to a beer joint at Cedar Springs and Olive Street, and Martin Salazar bought two bottles of beer with the money taken from the old man. We drank the beer and I left for home and Martin Salazar was still there when I left. * * *"

The confession was received in evidence without objection. Appellant did not testify.

Because of the penalty assessed we have made a more extended and detailed statement of the evidence than would otherwise have been thought proper, in order to demonstrate that under the facts the death penalty assessed by the jury was well merited.

Reversal is sought upon alleged errors brought forward in ten bills of exception.

Bill of exception number one reflects that witness Hill testified that he ran a beer tavern, and that on the night of the killing deceased came into witness' place and bought a bottle of beer; that every time deceased came to town he would buy beer at witness' place. He was asked on cross-examination if on the night of the killing deceased got drunk in witness' place. The state objected on the ground that such inquiry was immaterial, and the bill registers complaint because of such ruling. We fail to see the materiality of this inquiry. The evidence shows that deceased left Hill's place and later went to another beer tavern where he sought to buy more beer but was refused because he was thought at that time to have had "too much to drink." In the confession of appellant he said deceased was drunk when

he left this second beer tavern. There seems to have been no issue joined on this point.

Bill of exception number two, as qualified by the trial judge, shows that on cross-examination of state's witness Rodriguez he was asked if he had not been indicted in Dallas County for robbery, which he answered in the affirmative. He was then asked if he had not been in jail "a lot of times," to which he also answered, "Yes." The bill then shows that counsel for appellant asked, "Tell us about what all the ---." Here he was interrupted by an objection from the state that the question was improper, which objection was sustained. Counsel for appellant then asked how many times witness had been in jail for theft in Dallas County in the last three years, to which question objection was also sustained. Counsel for appellant then asked witness, "Tell us how many times you have been in jail or have been indicted for robbery." This was also objected to as being an improper question, which objection was sustained, and counsel for appellant then withdrew the question. It is apparent that the questions objected to were improperly framed, it not appearing that any charges for theft were based upon complaint and information, or indictments, and it further appears that no exceptions were reserved to the rulings of the court.

Bill of exception number three upon its face, with the court's qualification, does not exhibit error.

Bill of exception number four as qualified fails to reflect error. It appears therefrom merely that upon the cross-examination of Mary Rogers, a state's witness, she admitted that she had talked to the investigators and detectives, and had been trying to help them any way she could. She was then asked, "Of course, you didn't put it on anybody except this boy, did you? In other words you passed it on this boy, Mary Ann, the best you could?" The bill recites that the state's objection was sustained, and that if permitted to answer the witness would have said, "Yes."

It is observed that without some recital in the bill as to the witness' evidence on direct examination it is impossible to appraise the complaint. It further appears from the court's qualification that no exception was reserved to the ruling of the court, but only that upon being reminded by the court that an objection had been sustained counsel for appellant said, "I beg your pardon," but reserved no exception.

What appears in the transcript as bill of exception number five can not be considered as a bill at all. It purports to complain of an argument of the assistant district attorney. The trial court says he does not certify that the defendant objected or excepted to the argument; that the court reporter transcribed the argument and such transcription does not show any objection or exception to the remarks now complained of in said bill.

Bill of exception number six attempts to preserve and bring forward an objection and exception to the argument of Assistant District Attorney Bergman on the ground that it was a reference to the failure of appellant to testify. The bill was qualified and explained by the trial judge, which was accepted and filed by appellant, and he is bound by the qualification and explanation. See Carrizales v. State, 215 S. W. (2d) 342. Authorities are numerous and uniform on the subject. We refer to those noted in Sec. 215, page 138, Branch's Ann. Tex. P. C.

We are met at the threshold of the consideration of this bill by an objection from the state that the bill on its face fails to contain a certificate that no person other than appellant was in a position to have controverted the things claimed to have been objectionable in the argument.

The bill is defective in the respect mentioned. See Beasley v. State, 144 Tex. Cr. R. 369, 162 S. W. (2d) 964; Roundtop v. State, 131 Tex. Cr. R. 615, 100 S. W. (2d) 706; Mitchell v. State, 109 Tex. Cr. R. 643, 6 S. W. (2d) 753; Gonzales v. State, 113 Tex. Cr. R. 122, 18 S. W. (2d) 618; Huff v. State, 51 Tex. Cr. R. 441, 102 S. W. 407; Tillman v. State, 225 S. W. 165; Hubbard v. State, 94 Tex. Cr. R. 481, 251 S. W. 1054.

However, this being a death penalty case, we have examined the bill. It contains what purports to be the argument of which appellant complains, and recites that said argument was not in answer to or provoked by argument of appellant's attorney, and that said argument was objected to as being a reference to the failure of appellant to testify. The court's qualification—which was accepted without objection—is somewhat different, and we here quote same in full:

"The foregoing Bill of Exception No. 6 having been examined and considered by me is hereby approved subject to the following qualification and explanation, to-wit:

"The Court does not certify that there was any reference in the Assistant District Attorney's argument to the jury of the

failure of the defendant to testify, and that at the time the objecion was made the Court dismissed the jury, had the Court Reporter read back the Assistant District Attorney's argument four different times in an earnest endeavor to ascertain whether there had been the slightest reference to the failure of the defendant to testify, but the Court did not find such reference.

"The following excerpt from the Assistant District Attorney Douglas Bergman's argument as transcribed by the official Court Reporter of this Court, Mr. Leon Mathis, is here set out in full to show all that was said on this particular subject: 'Let your minds stray with me, now, gentlemen. Can't you just see the picture, can't you just see the moonlight falling down, and the old man walking out of the Bank *de* Ora and this defendant, this defendant is walking out behind him, stalking him, gentlemen, like a panther in the jungle stalks its prey. Walking out, and the evidence is uncontradicted. Caught him by the arm walking up the street. I wonder, gentlemen. I wonder. Valtiero? I wonder what he said to the old man. I wonder if he said to him, "Come on, don't you want me to take you home?" The only person that could tell us, gentlemen, the only person that could tell us, this defendant removed from this life for a dollar bill, with that crank case yonder. Can't you just see the picture? Can't you just see the picture? Can't you see him walking, the old man, just a little tipsy, down Alamo Street?'

"MR. LEWIS: If the court please, I understand—

"MR. BERGMAN: (Interposing) Go ahead, Roger, I will get back on the track. You keep making your objections.

(Consultation of counsel and Court at the Bench outside of the hearing of the reporter.)

"MR. LEWIS: We object to it 'the old man could take the stand.'

"THE COURT: Mr. Bowyer's objection is overruled.

"MR. BERGMAN: We object to Mr. Bowyer appearing in the case, and we object to any further conversation on his part. That is our objection.

"THE COURT: Well, I have sustained the objection. Let's get along. (Jury returned to the jury box.)

"MR. LEWIS: If the court please, we still want our exception, 'the old man to take the stand,' we still want our exception.

"THE COURT: Well, it is not in there, but I will give you an exception.

"MR. LEWIS: We except.

"THE COURT: You have your exception."

It will be recalled that immediately after deceased left the Bank D'Ora appellant and his companion Salazar followed him out. This was testified to by witnesses who were in the tavern at the time. The expression in the argument, "the evidence is uncontradicted," as it appears in the qualification could have had reference only to appellant and his companion following deceased out of the tavern. This was not only testified to by other witnesses present, but was admittedly true by appellant's own statement to officers Fritz and Beck, and in his written confession received in evidence without objection. There is no evidence that appellant said to deceased, "Come on, don't you want me to take you home?" This was purely a flight of oratorical imagination indulged in by the assistant district attorney, predicated perhaps on appellant's own statement in his confession, "I took the old man by the hand and led him up the alley." After consultation between the court and counsel at the bench comes the first objection, so far as the qualification shows, from appellant's attorney where he said, "We object to it, 'the old man could take the stand.' " The state's counsel never made this statement. The old man was dead. It could have had no reference to the trial. We are entirely in the dark as to what Mr. Bowyer said, or what his connection was with the case. Mr. Bergman seems to have resented Mr. Bowyer's appearance in the case, and made objection to it, which was sustained by the court. Then appellant's attorney said, "* * * we still want our exception, 'the old man to take the stand, * * *' " to which the court replied, "* * * it is not in there, but I will give you an exception."

The bill does not show that anyone had testified that appellant said to the old man, "Come on, I will take you home," or that the assistant district attorney so claimed, but only "wondered" if appellant might not have said something like that. The bill, as qualified, fails to show any objection was made or exception reserved to such remark, or to the statement of the assistant district attorney that: " "* * * The only person that could tell us, gentlemen, the only person that could tell us, this defendant removed from this life for a dollar bill, with that crank case yonder. * * *' ".

We are inclined to regard the incident as entirely too speculative to base thereon a holding that the argument was a "necessary" reference to the failure of appellant to testify. If it should

be thought that it was such a reference, there was no objection interposed thereto, or exception taken. Art. 710, C. C. P. See Cuellar, 110 Tex. Cr. R. 47, 7 S. W. (2d) 565; Boone v. State, 90 Tex. Cr. R. 374, 235 S. W. 580.

In Bills of Exception Numbers Seven and Eight appellant complains of the court's action in admitting in evidence the testimony of Captain Fritz and officer Beck as to what appellant told them about where to find deceased's hat, and about killing deceased. The only objection found in the bill of exception is that appellant was under arrest at the time, was not warned, and that the statement was not reduced to writing and signed by appellant.

Art. 727 C. C. P. requires a warning, a written, signed statement before a confession is admissible. We quote from said article: "* * * unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed. * * *."

In his brief appellant supplements the reasons stated in the bills of exception, and now contends that the hat recovered was neither secreted nor stolen property, nor the instrument with which the killing was committed, and that under the statute, it must be one or the other. We cannot agree with such contention. The use in the statute quoted of the words, "* * * such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed. * * *," are illustrative only, and not limitations on the statements which conduce to establish guilt, and which are found to be true. The body of deceased had been found, but the hat was missing. The officers had no knowledge of its whereabouts. It came into possession of appellant as a result of the killing. His knowledge of where it had been thrown, and information thereof to the officers, was highly incriminatory. The facts here present demonstrate that facts and circumstances may be stated by an accused which unquestionably are inculpatory and conduce to establish his guilt, and yet neither lead to the recovery of stolen property, or the instrument with which the offense was committed. The hat may not have been stolen property, but it was "secreted" property, beyond doubt, and came into possession of appellant as a result of the killing. See Leforis v. State, 141 Tex. Cr. R. 316, 148 S. W. (2d) 201; Mohler v. State, 98 Tex.

Cr. R. 238, 265 S. W. 553; Snow v. State, 106 Tex. Cr. R. 222, 291 S. W. 558; Wilganowski v. State, 78 Tex. Cr. R. 328, 180 S. W. 692; Williams v. State, 115 Tex. Cr. R. 28, 27 S. W. (2d) 233. Several of the cases cited are where oral statements of accused have lead to the finding of the body of deceased. We are not aware of any case excluding such proof. The body of deceased is "neither stolen nor secreted property," nor "the instrument with which the killing was accomplished," yet the finding of the body resulting from information of accused unquestionably conduces to establish his guilt.

Bill of exception number nine complains of misconduct of the jury, claiming that in their deliberation they referred to the fact that appellant did not testify.

In his charge the court had instructed the jury as follows:

"* * * The Court further instructs you that the law allows the defendant to testify in his own behalf, but a failure on his part to do so is not a circumstance against him, and no presumption of guilty can be indulged in by the jury for a failure on his part to do so. I instruct you in this case not to consider, discuss or even refer to such failure on the part of the defendant to testify during your consideration of this case. * * *".

Upon the hearing of the motion for new trial three of the jurors were interrogated. The first juror testified that soon after they retired, and before they had begun the discussion of the evidence, some juror remarked that appellant had not testified. Another juror immediately called attention to the court's charge, and the matter was not again mentioned or referred to, and no discussion of the appellant's failure to testify occurred during their deliberation. The testimony of the other two jurors was to the same effect. Many cases will be found in Note 44 under Art. 710 C. C. P. holding that the mere allusion by a juror to the fact that appellant had not testified will not call for a reversal. See also Branch's Ann. Texas P. C. for cases noted on page 293. See Scrivner v. State, 121 Tex. Cr. R. 565, 50 S. W. (2d) 329; Graham v. State, 123 Tex. Cr. R. 121, 57 S. W. (2d) 850; Bartlett v. State, 123 Tex. Cr. R. 464, 59 S. W. (2d) 157; Lafiite v. State, 122 Tex. Cr. R. 243, 54 S. W. (2d) 136, and cases therein cited. Henry v. State, 141 Tex. Cr. R. 486, 149 S. W. (2d) 115. The undisputed evidence of the jurors in the present case shows that there was only a bare mention that appellant had not testified, and that the provision of Art. 710 C. C. P. was not violated.

Bill of Exception Number Ten has been examined carefully. It is without merit on its face, and presents no error.

The judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant's motion for rehearing in this cause was argued orally in which a strong insistence is made that this court erred in not sustaining the objection to the testimony of the officers as to statements and conduct of appellant made while he was detained, and without warning. The original opinion discusses this evidence as brought before us in Bills of Exception Nos. 7 and 8 and we think the right conclusion was reached in the matter.

The argument is that the hat found as a result of the statement, and utilized as a basis for admitting the evidence, as discussed in the original opinion, does not "conduce to establish his guilt." We agree with the original opinion that the hat was secreted from the officers and, though it had nothing to do with the killing of the deceased, it has much to do with proving the presence of the accused at the place of the killing. We are cited to the cases of Owens v. State, 16 Tex. App. 448; Warren v. State, 29 Texas App. 370; and Pierson v. State, 168 S. W. (2d) 256, as authority for the contention, but we do not believe that they are in conflict with the holding in the original opinion and a lengthy discussion of them will not be necessary.

Other complaints found in the motion for rehearing have been discussed in the original opinion in a very thorough manner. A further and more lengthy discussion of the authorities on the subject would add but little, if any, to the jurisprudence of the state.

The motion for rehearing is overruled.