D. J. HOOBLER v. THE STATE.

No. 12741. Delivered January 29, 1930.
Reported in 24 S. W. (2d) 413.

The opinion states the case.

*Temple Shell* and *Joe B. Carrigan,* both of Wichita Falls, for appellant.

*Sam B. Spence,* Dist. Atty. *Geo. W. Anderson* and *Mike Anglin,* Ass. Dist. Attys., all of Wichita Falls, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—The offense is murder, the penalty death.

Deceased was a prosperous farmer living in and possessing a considerable estate in Oklahoma near the Texas line. Appellant had been living with deceased and his family some ten or twelve years, working most of this time as a farm hand. Appellant became indebted to various banks in the aggregate sum of seven or eight hundred dollars and represented to them when pressed for payment that he had an estate at Mt. Pleasant, Texas, of about eleven thousand dollars, which he would presently collect and liquidate his debts. These same representations were made to deceased. On the Sunday afternoon of the tragedy appellant and deceased started to Mt. Pleasant to look after this estate in appellant's car. On Monday morning appellant returned to the home of deceased and reported to his wife that deceased had become interested in a deal with an Archer County man and had gone off to look same over and would not return for several days, they having abandoned their trip to Mt. Pleasant because they ascertained that no money could be collected from the estate. After some four or five days the wife of deceased became alarmed at his failure to return and an investigation ensued. A few days thereafter appellant fell under suspicion and was placed in the city jail at Wichita Falls. The testimony tends to show that he was questioned all night regarding the disappearance of deceased; that this questioning continued throughout the next day and night, the record not being clear as to whether this questioning was continuous. Some of the witnesses testified to observing bruises on appellant's face. He was then taken by Mr. Hooper, Sheriff of Cotton County, Oklahoma, over to Oklahoma and the questioning continued. At that place he was told in substance by Mr. Hooper, the Sheriff, that the body of deceased was being searched for and that if it were found he had some enemies that would demand the keys to the jail, and that he would have to give them up, but if he, appellant, would tell him the truth, that he would protect him and

take him to Henrietta, Clay County, whereupon appellant told him in substance that he and deceased had left Wichita Falls for Mt. Pleasant and when about four miles out on the road they had begun quarrelling; that deceased attacked him with an automobile crank and struck him with it, chasing him around the car, and after refusing to stop the attack, after being warned, appellant shot him and took his body to the Miller pasture over in Archer County and left it. It further appears that the Sheriff then took appellant in his car and in company with other officers under the direction of appellant drove over to Archer County and there they found the body of deceased. Upon their return to Wichita Falls, after finding the body, appellant while still in custody made a detailed written confession, after statutory warning, witnessed by George W. Anderson and Charles Gant, the last named person being the one whose testimony will be discussed later in this opinion.

The admissibility of both the oral and written statement of appellant is presented by bills of exception, it being claimed that neither were voluntarily made and that each and both resulted from coercion, persuasion and the illegal action of those in custody of appellant when they were made.

Since the body of deceased was found as a result of the oral confession made to the Sheriff of Cotton County, Oklahoma, we regard the same as coming within the exception to the rule inhibiting the introduction of unwarned confessions made while in custody. Underhill's Criminal Evidence (3rd Ed.), Paragraph 230; Snow v. State, 291 S. W. 558; Williams v. State, 225 S. W. 177; Branch's Crim. Law, Sec. 222; Bouldin v. State, 87 Tex. Crim. Rep. 419. Nor do we think the facts present in this record show conclusively the existence of the matters claimed by appellant as would render the written confession inadmissible as a matter of law. However, it is correctly contended, we think, that there was present an issue as to whether or not the written confession made to the officers at Wichita Falls was a voluntary one and that the Court erred in refusing to submit such issue to the jury. The effect of the Court's refusal to submit such issue was to hold as a matter of law that there existed no evidence of coercion, assaults, persuasion or improper influences that might have operated upon the mind of appellant and induced him to make the statement under discussion. In this we think the Court erred. Under our view of the record there was ample testimony to raise the issue. The existence of extraneous facts conducing to establish appellant's guilt were not discovered as a result

of such written statement. It appears to have been made in the presence of some of the officers who are charged with and whom the testimony tends to show had abused and mistreated appellant in an effort to obtain from him a confession. He was still virtually within the power of those who had threatened him with a mob and whom it is charged had questioned him until he was exhausted. The circumstances clearly indicate that he may still have been under this improper influence and the issue which was requested in various special charges by appellant should have been submitted by the Court. The view of the trial court seems to have been that since the written statement was not materially variant from the oral confession and that since no improper influences were used at the very time it was made, that it was not necessary to submit the question of its being voluntary to the jury. We regard the written confession as containing material incriminating matter not shown in the oral confession. Then too, the two statements rested upon an entirely different basis and the jury may have disbelieved all or a part of the oral while crediting in full the written confession. The law question at issue was exhaustively discussed by Judge Morrow in Williams v. State, 225 S. W. 177. For other authorities see Johnson v. State, 48 Tex. Crim. Rep. 423; Gallaher v. State, 40 Tex. Crim. Rep. 296; Hernandez v. State, 110 Tex. Crim. Rep. 159, and authorities there collated.

It appears from Bill of Exception No. 29 that Charles Gant, who witnessed the written confession above discussed and who was a Deputy Sheriff of Wichita County, Texas, had been subpoenaed by the State as a witness and was present as a witness when the trial of appellant's case started, had not been excused from attendance by the Court or by counsel for appellant and was called by appellant as a material witness during the progress of the trial but could not be found; that he had disappeared, whereupon appellant moved the Court for a postponement, alleging that he could prove by Charles Gant, if present, that Gant had shortly after appellant's arrest questioned him at length in regard to his connection with the disappearance of appellant; that he accused appellant of killing deceased and attempted to persuade him to admit the fact and continued to question appellant throughout the night of February 7th and that he struck the appellant while so questioning him; that Gant was much stronger than appellant and was armed with a pistol and that throughout a part of the night he kept appellant awake and would not let him sleep in an attempt to make him confess and that he was

present with appellant when he made the written confession introduced in evidence. The Court refused to postpone the case until the testimony of this witness could be secured, to which appellant reserved a bill of exception. It was the theory of appellant that the State had run this witness off to prevent the use of his testimony. It developed on motion for new trial that this witness had been sent away on an errand by the Sheriff and that it was done without appellant's knowledge or consent and apparently without the knowledge or consent of the trial judge. The District Attorney as a witness testified in part with regard to this matter of sending the witness away: "I told George (the assistant district attorney) to go ahead and handle it, and do like he wanted to, I did not want to have anything to do with it. . . . I think I told George that if Mr. Bralley (the sheriff of Wichita County) was going to send Charlie Gant out of the county I did not want to be told anything about it." This witness, although subpœnæd by the State, is regarded in law as a witness for appellant. Leahy v. State, 13 S. W. (2nd) 874. The action of the Sheriff in sending him away was unauthorized and improper. The record is not entirely clear that he was sent away for the express purpose of depriving appellant of his testimony, but if this be true, as is charged, the act was reprehensible. The lives of men are not to be taken by the use of such methods. In justice to appellant on trial for his life the Court should have postponed the trial to secure this testimony. That it was material admits of no question.

The provision of the United States Constitution and of our own securing an accused against being compelled to give evidence against himself is not a cluster of high sounding words. It found its birth in the mother country in a demand of the common people so universal and imperative that it crystalized into a rule of law without legislative enactment. It sprang from inquisitorial methods used against persons so offensive to the justice loving Anglo-Saxon that there was evolved finally this provision as a measure of protection for the weak and helpless against those whose brutality they were powerless to oppose. This guaranty of protection has been transplanted into American institutions in the way of constitutional provisions "in the fullness of their integrity, free from the possibilities of legislative change." Many decisions of this Court, notably Williams v. State, supra, bear witness to the fact that this Court will not tolerate a violation of this rule which is not only a part of our constitution, but which anciently existed as a guardian of the rights

of men before a constitution was ever written. We have said this much to demonstrate that in our announcement herein we follow a law that is centuries old, and in the hope that peace officers may be more careful in observing this salutary provision of our constitution.

We note that the Court authorized in his charge the infliction of the death penalty without requiring proof of malice aforethought beyond a reasonable doubt. This was not raised by any exception and the question of the necessity for this charge is now pending before this Court but has not been finally decided. The opinion is expressed that it will be much safer to require the jury to find affirmatively beyond a reasonable doubt the existence of malice aforethought before a penalty in excess of five years can be inflicted.

We are further of the opinion that the Court on another trial should charge the terms of Art. 1223, P. C., on the presumption arising from the use of a deadly weapon, this being necessitated by evidence showing that the automobile crank alleged to have been used by deceased may have under the particular circumstances of this case been a deadly weapon. Mason v. State, 88 Tex. Crim. Rep. 642; Gaither v. State, 109 Tex. Crim. Rep. 154.

For the errors first above discussed, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.