## ALEX WILLIAMS V. THE STATE.

No. 16055.    Delivered November 1, 1933.
Rehearing Granted January 3, 1934.
Reported in 67 S. W. (2d) 269.

The opinion states the case.

*Howth, Adams & Hart,* of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for murder; penalty assessed at confinement in the penitentiary for ten years.

The parties were negroes. While appellant and the deceased were in the house of Mary Armstrong, she was called out by a neighbor. While talking to the neighbor, she observed appellant and deceased in a conflict or struggle as they were coming out of her house. They continued the struggle, each of them trying to get possession of an iron pipe. During the conflict she saw the appellant take a knife from his pocket. Another witness, who was about 125 yards away, saw the struggle after the parties came out of the house and from his description it appears that the appellant finally obtained possession of the instrument over which they were scuffling and hit the deceased upon the head, whereupon he fell to the ground. After the de-

ceased fell, appellant struck him a number of times, but the witness was unable to state what weapon, if any, was used.

According to the appellant's version of the encounter, as shown by his testimony, the deceased had insulted and threatened him several days before the homicide; that after the woman left the house and while appellant was in the act of leaving, the deceased grabbed an iron pipe which was used in holding up a window sash. Observing the movement of the deceased, the appellant also seized the iron pipe after having been struck on the wrist with it. The struggle over the pipe carried the parties outside where they were observed by the witnesses indicated above. The deceased died in about three hours from the wounds received in the encounter.

The doctor who examined the deceased testified that the wounds were numerous and serious; that one of the knife wounds penetrated the lung; that there were several wounds upon the head and a number of cuts about the arms and body; that the cuts on the arms went to the bone and severed a number of arteries, thereby causing a great loss of blood.

The witness Herbert, a police officer, in response to a call, visited the scene of the tragedy before the arrival of the ambulance and saw Jim Blair, the deceased, lying on the front steps of a building. Upon the arrival of the ambulance, the deceased was placed in it. Appellant was not present at the time but a few moments later was seen by the witness and the following conversation took place:

"Q. Where are you going, Alex? A. To the police station.

"Q. What is the trouble with you and that fellow? A. I cut that S. B. everywhere but under the feet.

"Q. Give me your knife. A. I haven't got it.

"Q. What did you do with it? A. I throwed it in the hedges right in front of the house."

The officer then told the appellant to get in his car so they could go and get the knife. The officer drove with the appellant to the place where appellant said he had hid the knife. The knife was picked up and exhibited at the trial. It was bloody when it was picked up and the blood stains were upon it at the time it was exhibited to the jury.

The admissibility of the officer's testimony, we understand, was opposed, as shown by Bill of Exception No. 1. The bill does not give the details but states that after his arrest the appellant confessed to the killing of the deceased; that said confession was not reduced to writing as required by article 727, C. C. P., or signed by the appellant; nor was the appellant warned that any statement made by him might be used

against him. In the article mentioned (727) the requirement that the confession be in writing is qualified with the following statement: "* * * unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed.".

In view of the statute and the fact that through the interview with the appellant the knife which was used in the killing was found where it had been secreted, the testimony of the officer was not improperly received. In support of the conclusion stated, reference is made to the notes under article 727, Vernon's Ann. C. C. P., vol. 2, subd. 12, among which are the following cases: Montgomery v. State, 101 Texas Crim. Rep., 474; Randolph v. State, 101 Texas Crim. Rep., 602; Silva v. State, 102 Texas Crim. Rep., 415; Smith v. State, 104 Texas Crim. Rep., 567; Turner v. State, 109 Texas Crim. Rep., 301; Ferguson v. State, 118 Texas Crim. Rep., 57.

It appears from the record that appellant requested the privilege of withdrawing Bills of Exception Nos. 2, 3 and 5, which bills had been approved by the court. The judge presiding at the trial made the following notation, which is found in the record:

"On this day came on to be heard the motion of Alex Williams to withdraw bills of exception Nos. 2, 3 and 5, previously presented, approved and filed as a part of the record in the above entitled and numbered cause.

"It appearing to the Court that the time granted for the filing of statement of facts and bills of exception has not expired and this Court having complete jurisdiction of this cause, grants the motion as made and orders the Clerk of the Criminal District Court of Jefferson County, Texas, to refrain from incorporating the said bills of exception, as now prepared, into the transcript of this cause."

We find the bills mentioned copied in the transcript but in view of the proceeding to which reference has just been made, the consideration of the bills will be pretermitted. Touching the authority of the judge to authorize the withdrawal or disregard of the bills of exception mentioned, is a matter upon which no opinion is expressed.

Bill No. 4 is not in a condition for consideration, for the reason that it does not bear the approval of the judge who presided in the trial of the case.

Special Charge No. 1, we think, was properly refused. How-

ever, it fails to show that it was presented to the court and passed upon before the argument began.

The court instructed the jury upon murder, both with malice and without malice, but declined to instruct on assault with intent to murder.

In the record there is found what is denominated "Defendant's Exception to the Court's Charge." To authorize consideration of objections to the charge under articles 666 and 667, C. C. P., the record must show that the objections to the charge in question were made at the time of the trial and brought to the attention of the trial judge before the charge was read to the jury. See Tex. Jur., vol. 4, p. 76, sec. 48, and cases collated, among them: Scott v. State, 106 Texas Crim. Rep., 376; Musick v. State, 106 Texas Crim. Rep., 207; Loyd v. State, 105 Texas Crim. Rep., 91. Many others to the same effect are collated in Vernon's Ann. Tex. C. C. P., 1925, vol. 2, under article 666, also in Vernon's Ann. C. C. P., 1916, art. 743, p. 526, note 64.

Perceiving no error justifying a reversal, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—Upon the corrected record, we find that Bill of Exception No. 4 requires consideration. The bill complains of the refusal of the court to instruct the jury on the law as set forth in article 1223, P. C., 1925, touching the presumption of intent to kill or do serious bodily injury arising from the use of a deadly weapon. From the bill and from the evidence it appears, as shown in the original opinion, that in the conflict there was used an iron pipe about half an inch in diameter, twenty inches long and weighing about one or one and a half pounds. It was shown that the deceased was about six feet tall. There was opinion evidence that the instrument, in the manner used, was a deadly weapon. It is thought that in refusing to give the instruction requested the court fell into error. See Carter v. State, 97 Texas Crim. Rep., 508; Hoobler v. State, 114 Texas Crim. Rep., 94; Dennis v. State, 101 Texas Crim. Rep., 454; Gaither v. State, 109 Texas Crim. Rep., 154; Lowe v. State, 111 Texas Crim. Rep., 137. See, also, precedents cited in Vernon's Ann. Tex. P. C., 1925, vol. 2, art. 1223, note 1; also, 1933 Supplement, p. 136, and notes.

The motion for rehearing is granted, the order of affirmance is set aside, the judgment of the trial court is reversed and the cause remanded. *Reversed and remanded.*